# United States Court of Appeals
## For the First Circuit

No. 19-1486

UNITED STATES OF AMERICA,

Appellee,

v.

JUAN ANIBAL PATRONE, a/k/a Juan Anibal, a/k/a Juan Anibal
Patrone-González, a/k/a Flacco, a/k/a Poppo, a/k/a Carlos,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Thompson, Lipez, and Kayatta,
Circuit Judges.

Leonard E. Milligan III, with whom Jin-Ho King and Milligan
Rona Duran & King LLC were on brief, for appellant.
Theodore B. Heinrich, Assistant United States Attorney, with
whom Andrew E. Lelling, United States Attorney, was on brief, for
appellee.

January 14, 2021

**KAYATTA**, **Circuit Judge**.  We consider on plain error review another appeal raising an unpreserved objection to a Rule 11 colloquy conducted prior to the United States Supreme Court's decision in Rehaif v. United States, 139 S. Ct. 2191 (2019).  In Rehaif, the Court held that a conviction for the illegal possession of a gun under 18 U.S.C. § 922(g) requires proof beyond a reasonable doubt that the defendant "knew he belonged to the relevant category of persons barred from possessing a firearm." Rehaif, 139 S. Ct. at 2200.  As we recently explained in United States v. Burghardt, 939 F.3d 397 (1st Cir. 2019), and again in United States v. Guzmán-Merced, No. 18-2146, 2020 WL 7585176 (1st Cir. Dec. 22, 2020), failure to advise a defendant of that requirement in accepting a plea constitutes clear error.  As we also explained, in the absence of any timely objections to the plea colloquy, such an error will warrant vacating the conviction and withdrawing the plea only if the defendant can establish a "reasonable probability" that, but for the error, the defendant would not have pled guilty to the offense.  Burghardt, 939 F.3d at 403; Guzmán-Merced, 2020 WL 7585176, at *1-2.

Applying this precedent, we find that defendant Juan Anibal Patrone fails to establish a reasonable probability that he would not have pled guilty had he been advised as Rehaif requires. For independent reasons, we also reject his objections to his sentence.  Our reasoning follows.

Patrone, a citizen of Italy and of the Dominican Republic, lawfully entered the United States on a tourist visa and settled in Lawrence, Massachusetts, in 2009 or 2010. At some point, his visa expired, although the record does not specify when this occurred. He subsequently obtained a work permit and was "in the midst of applying to remain in the United States" at the time of his arrest in the instant action.

In April 2016, the Drug Enforcement Administration commenced an investigation into a drug trafficking organization in Lawrence, Massachusetts. In the course of this investigation, the government gathered overwhelming evidence that Patrone had been involved in the widespread distribution and sale of fentanyl and other drugs for several years. The government also seized a loaded 10 millimeter firearm from his bed at the time of his arrest.

The government charged Patrone with one count of conspiracy to distribute and possess with intent to distribute drugs, including cocaine, heroin, and more than 400 grams of fentanyl, in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A), and one count of possessing a firearm as an alien unlawfully present in the United States, in violation of 18 U.S.C. § 922(g)(5)(A). The indictment did not allege that Patrone knew he was an alien who was unlawfully in the United States. See 18

U.S.C. § 922(g)(5)(A). On September 19, 2018, he pled guilty to both counts without benefit of a plea agreement.

Before accepting his guilty plea, the district court informed Patrone that a conviction for violating section 922(g)(5)(A) required the government to prove that Patrone was unlawfully in the United States and that he possessed the firearm and loaded magazine referenced in the firearm count. Neither the district court nor the government informed Patrone that the government would have to prove his knowledge of his unlawful immigration status in order to sustain a conviction on the firearm count. Patrone was subsequently sentenced to 144 months' imprisonment on the drug count and 120 months' imprisonment on the firearm count, to be served concurrently.

A month after Patrone's sentencing, the United States Supreme Court issued its opinion in Rehaif. As relevant here, Rehaif's holding means that had Patrone gone to trial, the government would have needed to prove beyond a reasonable doubt that when he possessed the gun, he knew that he was unlawfully in the United States. Rehaif, 139 S. Ct. at 2198. As is customary in criminal law, we refer to the degree of such knowledge as "scienter," id. at 2195, or (in this instance) "scienter-of-status." See Burghardt, 939 F.3d at 400.

Patrone asks that we vacate his conviction on the firearm count because the government did not charge him with, and he did

not plead guilty to, knowing the facts that made him a person prohibited from possessing a firearm, as Rehaif now requires. In addition, Patrone requests a remand for resentencing, claiming that the district court mistakenly applied a two-level sentencing enhancement for criminal livelihood on the drug charge under U.S. Sentencing Guideline Section 2D1.1(b)(16)(E). We address each challenge in turn.

**II.**

**A.**

Before accepting a guilty plea, a district court must conduct a colloquy with the defendant to ensure that he "understands the elements of the charges that the prosecution would have to prove at trial." Burghardt, 939 F.3d at 402 (quoting United States v. Gandia-Maysonet, 227 F.3d 1, 3 (1st Cir. 2000)); see also Fed. R. Crim. P. 11(b)(1)(G) ("[T]he court must inform the defendant of, and determine that the defendant understands, . . . the nature of each charge to which the defendant is pleading."). A defendant who pleads guilty does not waive all challenges to the adequacy of the plea colloquy. Burghardt, 939 F.3d at 402. Where, as here, a defendant waits until an appeal to raise such a challenge, we review that challenge only for plain error. See United States v. Dominguez Benitez, 542 U.S. 74, 80 (2004); Burghardt, 939 F.3d at 402—03; United States v. Hernández-Maldonado, 793 F.3d 223, 226 (1st Cir. 2015). Under

the plain error standard, a defendant must show "(1) an error, (2) that is clear or obvious, (3) which affects his substantial rights . . . , and which (4) seriously impugns the fairness, integrity, or public reputation of the proceeding." United States v. Correa-Osorio, 784 F.3d 11, 18 (1st Cir. 2015).

The parties agree that, after Rehaif, the district court's (understandable) failure to ascertain whether Patrone knew that he was an alien unlawfully in the United States constitutes clear error. So our inquiry hinges on prongs three and four of the plain error standard -- whether the district court's error prejudiced Patrone (i.e., were his substantial rights affected) and whether the error "seriously impugns the fairness, integrity, or public reputation of the proceeding." Correa-Osorio, 784 F.3d at 18. In a case such as this, an assessment of prejudice will usually turn on whether the defendant can show a "reasonable probability that, but for the purported error, he would not have pled guilty." Burghardt, 939 F.3d at 403 (quoting United States v. Diaz-Concepción, 860 F.3d 32, 38 (1st Cir. 2017)); see generally Dominguez Benitez, 542 U.S. 74 (2004).

Claiming to accede to plain error review, Patrone actually argues for a variant of that review. That variant treats the third prong as always satisfied when the discussion of an offense during a plea colloquy omits an element of the offense, regardless of whether the omission actually played any role in the

defendant's decision to plead. The Fourth Circuit recently adopted such a variant, calling Rehaif error a structural error that per se adversely affects a defendant's substantive rights. United States v. Gary, 954 F.3d 194, 203-05 (4th Cir. 2020) ("[T]his Court has held that [structural errors] necessarily affect substantial rights, satisfying [the plain error standard's] third prong."), cert. granted, No. 20-444, 2021 WL 77245 (Jan. 8, 2021).

We have already crossed this bridge, but in the opposite direction, requiring that a defendant who asserts an unpreserved claim of Rehaif error must demonstrate prejudice in the form of "a reasonable probability that, but for this purported error, he would not have pled guilty." Burghardt, 939 F.3d at 403. Nor do we see good reason to reverse our path. The Supreme Court itself gestures in the direction we have taken. See Dominguez Benitez, 542 U.S. at 81 n.6 ("The omission of a single Rule 11 warning without more is not colorably structural."). And at least two other circuits have rejected Gary's adoption of Patrone's proffered version of plain error review in cases such as this. United States v. Hicks, 958 F.3d 399, 401—02 (5th Cir. 2020) (rejecting the Fourth Circuit's structural error holding in Gary); United States v. Coleman, 961 F.3d 1024, 1029—30 (8th Cir. 2020) (rejecting the argument that a plea suffering from a Rehaif error is structural error and applying a reasonable probability standard to the third prong of plain error review). Six other circuits proceed more or

- 7 -

less as we have, albeit without expressly considering an argument that a Rehaif error is a structural error that automatically satisfies the third prong of plain error review. See United States v. Balde, 943 F.3d 73, 97—98 (2d Cir. 2019) (noting that in some cases a Rehaif error may have no effect on a defendant's conviction or decision to plead guilty); United States v. Sanabria-Robreno, 819 F. App'x 80, 82—83 (3d Cir. 2020) (applying a reasonable probability standard to the third prong of plain error review); United States v. Hobbs, 953 F.3d 853, 857—58 (6th Cir. 2020) (same); United States v. Williams, 946 F.3d 968, 975 (7th Cir. 2020) (rejecting a defendant's argument that the government should bear the burden of persuasion in Rehaif cases and applying a reasonable probability standard to the third prong of plain error review); United States v. Fisher, 796 F. App'x 504, 510 (10th Cir. 2019) (applying a reasonable probability standard to the third prong of plain error review); United States v. McLellan, 958 F.3d 1110, 1119—20 (11th Cir. 2020) (same).

We see no error in the structure of the proceedings in the district court that necessarily impacted Patrone's substantial rights; rather, we see an error in describing an offense, the likely effect of which can often be reasonably discerned from the facts of the case. Compare Burghardt, 939 F.3d at 404 (finding that there was no reasonable probability that the defendant would have pled otherwise), with Guzmán-Merced, 2020 WL 7585176, at *2

(finding that there was a reasonable probability the defendant would not have entered a guilty plea had he known of the scienter-of-status requirement).  Under Patrone's proposed approach, a defendant not informed that an offense requires proof of his knowledge that he was not legally within the United States at the time of his offense could withdraw his plea even if he was carrying a copy of his affirmed order of removal at the time of the offense. Finding that such an outcome fits poorly with Rule 52, we opt to stay the course.  Our decision in this case, as in Burghardt and Guzman, therefore turns on whether there is a reasonable probability that, but for the error, the outcome of the proceedings would have been different.

Patrone contends that he would not have pled guilty to the firearm offense had he known about the scienter-of-status element, because there was little or no evidence that he knew that his presence in the United States was unlawful.  Certainly the record as it stood at the plea colloquy was sparse on this question:  It merely established that his arrest occurred long after his tourist visa had likely expired, and after he had applied to remain in the United States.  This is far from the "overwhelming proof" of guilt that led us to find no prejudice in Burghardt. 939 F.3d at 404.  Perhaps Patrone believed his pending application to remain in the United States rendered his presence lawful.  Of course, Patrone would have had to consider what additional evidence

- 9 -

of scienter-of-status the government might have gathered and presented, had it known it would be required to do so to secure a conviction at trial. But at this juncture, the government does not and cannot reasonably contend that it certainly would have prevailed at trial had Patrone not pled guilty to the section 922(g) charge.

Our inquiry, though, does not end with weighing the likelihood of a conviction in light of the scienter-of-status element that the government must prove. Other considerations may also bear heavily on a defendant's decision to plead guilty. For example, in this case, Patrone had no reasonable option but to plead guilty to the related and more serious drug charge, for which the government's proof was overwhelming. Indeed, Patrone makes no claim that he would not have pled guilty to the drug count had he thought he might beat the firearm possession count. Even on this appeal, he does not seek to withdraw his plea on the drug count, asking for resentencing only if we first find that his GSR must be recalculated without the two-level leadership enhancement imposed by the district court. Patrone must have known when he decided to plead guilty that the drug count would determine the length of his imprisonment: Both parties -- and Probation, in the PSR -- correctly anticipated that the firearms charge would generate only a lower, concurrent sentence. And Patrone does not claim that he anticipated that the firearm count might add any term to his

conditions of imprisonment or release after his period of incarceration. When he pled guilty, Patrone almost certainly knew that he did not stand to gain anything from proceeding to trial on the firearms charge, even if an acquittal on that charge was very likely.

In fact, choosing to proceed to trial on the firearm charge instead of pleading guilty may well have put Patrone in a worse position at sentencing, as his ability to retain the three-level offense reduction for acceptance of responsibility that he received under the Guidelines would have been uncertain at best. This circuit has yet to decide whether a defendant indicted on multiple counts can receive an acceptance of responsibility reduction when pleading to fewer than all of the counts. See United States v. Deppe, 509 F.3d 54, 61 (1st Cir. 2007) (declining to determine whether "acceptance of responsibility is an all[-]or[-]nothing proposition and [whether] a rebuttable presumption of non-availability . . . applies where a defendant pleads guilty to some but not all of the crimes charged in a multi-count indictment"). But most other circuits addressing this issue have held either that an all-or-nothing approach should be taken -- that failure to plead to all counts irrevocably removes the possibility for acceptance-of-responsibility credits -- or that such credits are lost when the charges pled to and charges contested unsuccessfully at trial are grouped for purposes of

- 11 -

sentencing.  See United States v. Hargrove, 478 F.3d 195, 200 (4th Cir. 2007); United States v. Williams, 344 F.3d 365, 379-81 (3d Cir. 2003); United States v. Thomas, 242 F.3d 1028, 1034 (11th Cir. 2001); United States v. Chambers, 195 F.3d 274, 277–79 (6th Cir. 1999); United States v. Ginn, 87 F.3d 367, 371 (9th Cir. 1996); United States v. Kleinebreil, 966 F.2d 945, 954 (5th Cir. 1992).

So the actual decision Patrone faced was this:  Given that he was pleading guilty to the drug count, should he also plead guilty to the gun charge, adding nothing to his sentence and locking in a lower Guidelines sentencing range (GSR),[1] or should he go to trial on the gun charge, thereby triggering a potentially higher GSR on the drug count?  In short, should he go to trial with no hope of lowering his sentence and a real risk that he might lengthen it?  For virtually all defendants, the choice would be easy and the answer clear -- plead to both counts in order to lock in the reduction for acceptance of responsibility to the extent possible, unless, perhaps, victory was certain.

Patrone counters by suggesting that by avoiding conviction on the gun charge, he might have garnered a lower GSR by availing himself of the safety valve provision of 18 U.S.C.

---

[1]  The three-level reduction for acceptance of responsibility reduced the GSR from a recommendation of life imprisonment to a recommended range of 324 to 405 months' imprisonment.

§ 3553(f), which was unavailable to him because of his possession of a firearm.  18 U.S.C. § 3553(f)(2).  But it was Patrone's possession of the gun -- not the unlawful nature of the possession -- that rendered the safety valve unavailable.  See United States v. McLean, 409 F.3d 492, 501 (1st Cir. 2005) (holding that "a defendant who has constructively possessed a firearm in connection with a drug trafficking offense is ineligible for the safety valve provisions set forth at 18 U.S.C. § 3553(f)"); see also United States v. Munyenyezi, 781 F.3d 532, 544 (1st Cir. 2015) ("[A] judge can find facts for sentencing purposes by a preponderance of the evidence[.]").  And Patrone has not disputed, either below or on appeal, that the evidence of his constructive possession of the firearm in connection with the drug offense was both overwhelming and unaffected by any need to prove that Patrone knew his immigration status.

\* \* \*

For the foregoing reasons, Patrone fails to establish that his substantial rights were affected by the district court's failure to anticipate Rehaif.[2]

---

[2] This conclusion obviates the need to consider the fourth prong of plain error review:  whether the error "seriously impugns the fairness, integrity, or public reputation of the proceeding." Correa-Osorio, 784 F.3d at 18.

We next turn to Patrone's challenge to the livelihood enhancement that he received at sentencing. The effect of this enhancement was to raise his GSR from 262—327 months' imprisonment to 324–405 months'.

The government raises a fair question concerning whether Patrone preserved any objection to the availability of the livelihood enhancement. We sidestep that question by holding that, even if preserved, the objection fails. Our reasoning follows.

U.S. Sentencing Guideline Section 2D1.1(b)(16)(E) adds two levels to the Guidelines calculation if a defendant is subject to section 3B1.1 and "committed the offense as part of a pattern of criminal conduct engaged in as a livelihood." U.S.S.G. § 2D1.1(b)(16)(E). "'[P]attern of criminal conduct' and 'engaged in as a livelihood' have the meaning given such terms in § 4B1.3." U.S.S.G. § 2D1.1, cmt. n.20(c). Application Note One to section 4B1.3 states that "[p]attern of criminal conduct" means "planned criminal acts occurring over a substantial period of time. Such acts may involve a single course of conduct or independent offenses." U.S.S.G. § 4B1.3, cmt. n.1. Application Note Two to § 4B1.3 defines "[e]ngaged in as a livelihood" as

> A) the defendant derived income from the pattern of criminal conduct that in any twelve-month period exceeded 2,000 times the then existing hourly minimum wage under federal law; and (B) the totality of

- 14 -

> circumstances shows that such criminal conduct was the defendant's primary occupation in that twelve-month period (e.g., the defendant engaged in criminal conduct rather than regular, legitimate employment[,] or the defendant's legitimate employment was merely a front for the defendant's criminal conduct).

Id., cmt. n.2.

Patrone claims that he was not engaged in the business of selling fentanyl for long enough to render it a "livelihood" under section 4B1.3.  But Patrone pled guilty to conducting his charged conduct for over a year -- from the government's first purchase, in a series of controlled buys beginning on May 20, 2016, until his arrest on May 30, 2017, at which time the government seized 387 grams from his courier.  He points to no authority that suggests that such a period of time is too short to qualify.  And while we have not addressed the issue, at least five other circuits have found that periods of even less than twelve months can be "substantial" for purposes of section 4B1.3.  See, e.g., United States v. Pristell, 941 F.3d 44, 52 (2d Cir. 2019) ("[S]ix months is consistent with the plain meaning of the phrase 'substantial period of time.' . . . Indeed, had the sentencing commission intended to define 'substantial period of time' as no less than twelve months, it could have chosen to do so, but did not."); United States v. Cryer, 925 F.2d 828, 830 (5th Cir. 1991) (describing the application note to § 4B1.3 as "quite clear," requiring "only that '[the pattern of] criminal conduct' be the

- 15 -

defendant's 'primary occupation' during the relevant twelve-month span, not that the defendant engage in crime for an entire year," and finding that four months of activity was sufficient); United States v. Reed, 951 F.2d 97, 101 (6th Cir. 1991) ("The seven-month period [of criminal activity] is long enough to constitute 'a substantial period of time[]' [under U.S.S.G. § 4B1.3]."); United States v. Hearrin, 892 F.2d 756, 758 (8th Cir. 1990) (imposing a criminal livelihood enhancement for criminal conduct over "a substantial time period of eight months"); United States v. Irvin, 906 F.2d 1424, 1426 (10th Cir. 1990) (interpreting "the phrase 'a substantial period of time' in [the application notes accompanying section 4B1.3] to require more than a short, quick, one-time offense" and finding that five to seven months of activity was sufficient).

Additionally, the language in the Guidelines and the relevant application notes does not support Patrone's interpretation. "Pattern of criminal conduct" includes the requirement that the planned criminal acts occurred "over a substantial period of time." U.S.S.G. § 4B1.3 cmt. n.1. "Engaged in as a livelihood" includes the requirement that the income derived in any twelve-month period exceeded 2,000 times the then-existing hourly minimum wage under federal law and that the criminal conduct was the defendant's primary occupation in that twelve-month period. Id. cmt. n.2. The "engaged in as a

- 16 -

livelihood" factor does not require that a defendant engaged in criminal conduct for the entirety of twelve months -- one large criminal activity, resulting in significant profit, could suffice, if that was a defendant's primary occupation during that time period. Consequently, there is no reason why we would apply a twelve-month requirement to the "substantial period of time" prong.

## III.

Based on the foregoing, we <u>affirm</u> Patrone's conviction and sentence.