# United States Court of Appeals
## For the First Circuit

No. 19-2257

UNITED STATES,

Appellee,

v.

DAMON AUSTIN,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

---

Before

Lynch and Selya, Circuit Judges,
and Katzmann,* Judge.

---

Andrew Levchuk for appellant.
Seth R. Aframe, Assistant United States Attorney, with whom
Scott W. Murray, United States Attorney, was on brief, for
appellee.

---

March 12, 2021

---

* Of the United States Court of International Trade, sitting
by designation.

**KATZMANN, Judge.** Defendant-appellant Damon Austin pleaded guilty to two counts of unlawful firearm possession by a prohibited person in violation of 18 U.S.C. §§ 922(g) and 924(a)(2), and was sentenced to imprisonment. Following Austin's plea, the Supreme Court issued a decision in Rehaif v. United States, 139 S. Ct. 2191 (2019), which held that a conviction for unlawful possession of a firearm requires the government to prove that the defendant knew he had the relevant status prohibiting possession. Austin alleges on appeal that, under Rehaif, the district court committed plain error by failing to inform him at his plea colloquy that conviction for violation of 18 U.S.C. §§ 922(g) and 924(a)(2) required the government to prove that he knew he was prohibited from possessing firearms. Separately, Austin alleges that the search warrant issued for his residence was unsupported by probable cause, and that the district court erred in denying without an evidentiary hearing his motion to suppress evidence resulting from the execution of that warrant.

We determine that the search warrant issued for Austin's residence was supported by probable cause and affirm the district court's denial of Austin's motion to suppress. We also conclude, in accord with our recent decisions in United States v. Patrone, 985 F.3d 81 (1st Cir. 2021), and United States v. Farmer, No. 19-1603, 2021 WL 567419 (1st Cir. Feb. 16, 2021), that the district court did not plainly err by accepting Austin's guilty plea.

- 2 -

Because this appeal follows a guilty plea, we draw the facts "from the change-of-plea colloquy, the Presentence Report (PSR), and the transcript of the sentencing hearing." United States v. Rossignol, 780 F.3d 475, 476 (1st Cir. 2015) (citing United States v. Cintrón-Echautegui, 604 F.3d 1, 2 (1st Cir. 2010)). Below, Austin stipulated as part of his plea agreement that if the case proceeded to trial, the government would introduce evidence of specified facts that would prove the elements of the offenses beyond a reasonable doubt.

On April 14, 2018, Somersworth, New Hampshire law enforcement officials were notified of an altercation involving a firearm. Responding officers, among them Officer Anthony DeFrancesco, were informed that Austin had threatened Christopher Brown with a handgun outside Brown's residence. Brown informed law enforcement that Austin was his cocaine supplier and had recently been staying at Brown's home. Brown's wife had, on the morning of April 14, 2018, requested that Austin leave the residence. Austin initially refused, but at some point left Brown's home. He later returned in a vehicle driven by Tanya Phillips and engaged in an argument with Brown, during which Austin threatened Brown with a loaded firearm before driving away. Brown informed the responding officers that he recognized the firearm as a Glock which Austin had previously acquired in exchange for crack cocaine.

Officers Joseph Geary and Alexander Mulcahey located Phillips' vehicle, and conducted a felony traffic stop. Austin and Phillips were removed from the vehicle, and Officer Geary located a loaded magazine on Austin's person. Austin advised the officers that there was a firearm in the front seat of the vehicle, which Officer DeFrancesco, who had arrived during the arrest process, observed in plain view and retrieved. A search of Austin's person incident to arrest located two plastic containers of hash butane oil. Prior to being removed from the scene, Austin revealed in a post-Miranda statement that he was a convicted felon. During booking, Austin further stated that he was a member of the Mattapan Avenue Crips street gang.

After the arrests of Phillips and Austin, Officer DeFrancesco prepared and submitted an affidavit in support of a search warrant application for Phillips' and Austin's shared residence. He swore to the foregoing facts, as well as to the fact that the firearm located in Phillips' vehicle was determined to be stolen. Officer DeFrancesco further stated that Brown had informed him that Austin (1) sold crack, cocaine and marijuana; (2) made crack at the residence he shared with Phillips; (3) recently sold Brown cocaine at the residence; (4) within the prior two days had possessed two ounces of cocaine and two ounces of crack at the residence; and (5) had multiple firearms stored at the residence. In particular, Officer DeFrancesco affirmed that

Brown described two black safes located at the residence, one in the dining room and one in the bedroom, which Brown claimed Austin used to store guns, cocaine, and money.

Officer DeFrancesco's affidavit also recounted statements made by Phillips after she knowingly waived her Miranda rights. Among them, Officer DeFrancesco testified that Phillips confirmed the existence of two safes in the residence she shared with Austin: one in the living room which belonged to Austin, and one in the bedroom in which she stored paperwork. Finally, the affidavit recounted Austin's stated membership in the Mattapan Avenue Crips gang, and his previous felony conviction for assault and battery.

On the strength of Officer DeFrancesco's affidavit, the search warrant was granted. The search took place on April 14, 2018, the same day as Austin's arrest, and resulted in the seizure of seven additional firearms, six of which had traveled in interstate or foreign commerce. Austin was subsequently indicted for two counts of possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2): the first for possession of the firearm retrieved from the front seat of Phillips' vehicle, and the second for possession of six firearms retrieved during the execution of the April 14 search warrant.

On December 31, 2018, Austin moved to suppress the evidence obtained during the execution of the April 14 search

warrant, alleging that the affidavit was not supported by probable cause. Austin specifically argued that Officer DeFrancesco failed to "demonstrate that Brown was a reliable informant" and to "corroborate his basis of knowledge for drugs and firearms being at the . . . residence." In so arguing, Austin relied on case law regarding the verification of tips from confidential informants. See, e.g., United States v. Ramírez-Rivera, 800 F.3d 1, 27 (1st Cir. 2015), cert denied, 136 S. Ct. 917 (2016), abrogated on other grounds by United States v. Leoner-Aguirre, 939 F.3d 310 (1st Cir. 2019). Austin further contended that Officer DeFrancesco omitted contradictory information from his affidavit.

The district court declined to hold an evidentiary hearing on the alleged omissions in Officer DeFrancesco's affidavit and denied Austin's motion to suppress, finding that the warrant was supported by probable cause. On January 31, 2019, Austin pleaded guilty to both counts of the indictment. The Supreme Court issued its decision in Rehaif on June 21, 2019. On November 19, 2019 (with judgment entering on November 25, 2019), the district court sentenced Austin to a term of imprisonment of eighty-four months, to be served concurrently on both counts, and

to be followed by three years on supervised release.  Austin appealed.[1]

## II.

On appeal, Austin contends that the district court erred in denying his motion to suppress because the search warrant was not supported by probable cause.  As noted above, Austin argues that Brown was in essence a confidential informant, and that the information he provided was therefore insufficient basis for a search warrant without further corroboration.  In so doing, Austin rejects the characterization of Brown as a victim or percipient witness and disputes the corroborative sufficiency of Phillips' admissions in custody.

We review de novo the district court's conclusion that the facts of the search warrant affidavit constitute probable cause.  United States v. Greenburg, 410 F.3d 63, 66 (1st Cir. 2005) (quoting United States v. Barnard, 299 F.3d 90, 92-93 (1st Cir. 2002)).  Our review is limited to the "facts and supported opinions" set out within the four corners of the affidavit.  United

---

[1] In his plea agreement, Austin reserved his right to appeal the denial of his suppression motion, as well as any issue "based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of [his] Plea Agreement that have retroactive effect."

States v. Joubert, 778 F.3d 247, 252 (1st Cir. 2015); United States v. Vigeant, 176 F.3d 565, 569 (1st Cir. 1999).

A search warrant must be supported by "probable cause to believe that (1) a crime has been committed, and (2) that enumerated evidence of the [crime] will be found at the place to be searched[.]'" Joubert, 778 F.3d at 251 (quoting United States v. Hicks, 575 F.2d 130, 136 (1st Cir. 2009)). Probable cause exists where there is a "fair probability that . . . evidence of a crime will be found in a particular place." United States v. Silva, 742 F.3d 1, 7 (1st Cir. 2014) (quoting Hicks, 575 F.2d at 136). The fair probability required is only that "on which 'reasonable and prudent [people,] not legal technicians, act.'" United States v. Adams, 971 F.3d 22, 32 (1st Cir. 2020) (quoting Florida v. Harris, 568 U.S. 237, 244 (2013) (alteration in original)).

We determine, as did the district court, that Officer DeFrancesco's affidavit was sufficient support for the search warrant issued. Contrary to Austin's argument, Brown was not a confidential informant whose statements to the police demanded additional "information from which a magistrate can credit [his] credibility." United States v. Gifford, 727 F.3d 92, 99 (1st Cir. 2013) (citing Barnard, 299 F.3d at 93 (1st Cir. 2002)). Rather, Brown was the victim of Austin's reported threat, and a percipient witness to Austin's possession of contraband at the residence he

shared with Phillips.  As such, Brown's "uncorroborated testimony" can and does support a finding of probable cause absent "circumstances that would raise a reasonably prudent officer's antennae."  Acosta v. Ames Dep't. Stores, Inc., 386 F.3d 5, 10 (1st Cir. 2004).

Austin's reliance on case law addressing the credibility of confidential informants is inapposite. In Ramírez-Rivera, the court rejected a tip from an unnamed confidential informant who had no apparent firsthand knowledge of the information he conveyed, and provided no substantial details corroborating the location of the proposed search beyond the general location of the house and its external appearance.  800 F.3d at 28.  In contrast, Brown was identified in the affidavit and claimed detailed firsthand knowledge of Austin's home and the items it contained. Furthermore, Brown's account was corroborated in part by Phillips' statement that there was a safe that Austin alone utilized in the residence they shared.  Clearly this was not the kind of vague and uncorroborated tip at issue in Ramírez-Rivera.

Indeed "[a] specific, first-hand account of possible criminal activity is the hallmark of a credible tip."  Greenburg, 410 F.3d at 67.  The information provided by Brown, and recounted by Officer DeFrancesco in his affidavit, was exactly that. Moreover, and contrary to Austin's own assertions, we have found that "[w]hen a self-incriminating statement is provided by an

informant whose identity is known to the authorities, the statement is more likely to be true because of the risk inherent in making such a statement." Id. at 67-68 (citing United States v. Harris, 403 U.S. 573, 583-84 (1971)).

Nor is there any reason for Brown's assertions to "raise a reasonably prudent officer's antennae." Acosta, 386 F.3d at 10. We have already rejected Austin's argument that Brown's admitted criminal behavior renders him a less-credible witness. We similarly find Austin's argument from United States v. Tanguay, 787 F.3d 44 (1st Cir. 2015), uncompelling, given that Tanguay's reference to the reliability of a "law-abiding eyewitness" was in contrast to that of a professional informant. Compare Tanguay, 787 F.3d at 50, with United States v. Blount, 123 F.3d 831, 835-36 (5th Cir. 1997), and United States v. Campbell, 732 F.2d 1017, 1019 (1st Cir. 1984).

Finally, we reject Austin's contention that Brown's animosity toward Austin should have raised the suspicions of Officer DeFrancesco, the magistrate, or the district court. Taken together with Brown's self-incriminating statements, his firsthand and specific knowledge, and Phillips' corroboration of his assertions, the fact of Brown's recent conflict with Austin is poor evidence of his unreliability. We therefore conclude that the district court did not err in finding that the information Brown provided to DeFrancesco was credible and reliable, and that

the warrant affidavit was sufficient to demonstrate a "fair probability that . . . evidence of a crime" would be found in Austin's residence.  Silva, 742 F.3d at 7.  Accordingly, we affirm the district court's conclusion that the search warrant was supported by probable cause.

## III.

In addition to challenging the district court's denial of his motion to suppress, Austin alleges that the district court erred by failing to grant an evidentiary hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978).[2]  Austin argues that Officer DeFrancesco "omitted material information" sufficient to cast doubt on his affidavit, and that Austin was therefore entitled to a hearing.  Specifically, Austin points to what he argues is the apparent conflict between the affidavit's account of statements made by Phillips and the reports from Special Agent Kristi McPartlin and Officer Geary that Phillips invoked her Miranda rights.  In fact, as we later say, we see no such conflict.  Austin

---

[2] Below, in seeking an evidentiary hearing, Austin contended that the Leon good-faith doctrine establishing an exception to the exclusionary rule should not apply because, in his view, the affidavit omitted certain information.  United States v. Leon, 468 U.S. 897, 922 (1984).  Austin did not cite Franks v. Delaware or ask specifically for a Franks hearing.  While the Government argues that Austin did not preserve the Franks issue below, we note that Austin did request an evidentiary hearing for his motion to suppress, and that the district court treated  this request as an invocation of Franks, and proceeded accordingly in its analysis. We therefore consider the issue on appeal.

- 11 -

also points to the affidavit's omission of Austin's statement that he traveled to Brown's residence to take custody of a gaming console and suggests that this statement contradicts Brown's failure to mention a console.

We review the denial of a Franks hearing for clear error. United States v. Graf, 784 F.3d 1, 6 (1st Cir. 2015) (citing United States v. Reiner, 500 F.3d 10, 14 (1st Cir. 2007)). Clear error is present where "we are left with the definite and firm conviction that a mistake has been committed." Id. (citing Hicks, 575 F.3d at 138 (1st Cir. 2009)).

Under Franks, a defendant is entitled to an evidentiary hearing to test the veracity of a warrant affidavit if he can make a substantial showing that (1) the affiant intentionally or with reckless disregard for the truth included a false statement in the affidavit, or omitted information from the affidavit; and (2) such false statement or omitted information was material to the probable cause inquiry. Tanguay, 787 F.3d at 48-49 (citing Franks, 438 U.S. at 155-56); United States v. Barbosa, 896 F.3d 60, 68-69 (1st Cir. 2018).

The district court found that Austin failed to make such substantial showing. We agree. As the district court noted, none of the reports Austin identifies as containing contradictory facts omitted from Officer DeFrancesco's affidavit had been prepared by the time the affidavit was prepared and submitted. Information

- 12 -

that did not yet exist could not have been intentionally or recklessly omitted by Officer DeFrancesco and does not undermine the presumptive validity of his affidavit. See Barbosa, 896 F.3d at 67, 68-69.

Even if the reports had existed at the relevant time, Austin does not make a substantial showing that their contents would have been material to a warrant application. First, Austin provides no basis for concluding that Brown's statements about the altercation with Austin and Austin's possession of contraband are meaningfully inconsistent with Austin's assertion that he hoped to collect a gaming console from Brown. Second, accounts of Phillips invoking her Miranda rights upon arrest do not preclude her subsequent waiver of those rights, and there is nothing in the record to suggest that Phillips' statements to Officer DeFrancesco were anything but properly obtained.[3]

We conclude that the district court did not clearly err in finding that Austin had not at any stage made a substantial showing that Officer DeFrancesco's affidavit was materially false or omitted material facts. We therefore reject Austin's claim that he was entitled to a Franks hearing and affirm the district court's denial of his request.

---

[3] It is well-established that a suspect's invocation of Miranda does not result in "a blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation." Michigan v. Mosley, 423 U.S. 96, 102 (1975).

- 13 -

**IV.**

As we have noted, on June 21, 2019, nearly five months after the hearing in which the district court accepted Austin's guilty plea, the Supreme Court held in Rehaif that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200. In other words, the charges against Austin involved both a possession element and a status element. Five months after the Rehaif decision, Austin was sentenced to eighty-four months in prison followed by three years on supervised release.

Austin now alleges for the first time that his guilty plea must be vacated due to the district court's failure to inform him of the status element of his charges at the plea colloquy, and the absence of the element in his indictment, which each prevented his plea from being voluntary and intelligent. Austin's central argument is that his judgment of conviction should be vacated because "a standalone Rehaif error [at plea colloquy] satisfies plain error review because such an error is structural." United States v. Gary, 954 F.3d 194, 200 (4th Cir. 2020), cert. granted, No. 20-444, 2021 WL 77245 (U.S. Jan. 8, 2021). Secondarily, Austin argues that he was prejudiced by the district court's omission of the status element at his plea colloquy because "[p]roving a

- 14 -

defendant's subjective knowledge that he or she is violating the law makes a case far more difficult for the government" and allows additional defenses, which Austin did not know were available at the time of his guilty plea.  Finally, Austin contends that the indictment's failure to allege knowledge of status violated his substantial rights.

We review each of Austin's arguments under a plain error standard.  See Patrone, 985 F.3d at 84 ("Where, as here, a defendant waits until an appeal to raise [a challenge to the plea colloquy], we review that challenge only for plain error." (first citing United States v. Dominguez Benitez, 542 U.S. 74, 80 (2004); then citing United States v. Burghardt, 939 F.3d 397, 402–03 (1st Cir. 2019); and then citing United States v. Hernández-Maldonado, 793 F.3d 223, 226 (1st Cir. 2015))); United States v. Lara, 970 F.3d 68, 86 (1st Cir. 2020) (applying the plain error standard where appeal challenges "Rehaif-based defect in indictment").  Under a plain error standard, Austin must show "(1) an error, (2) that is clear or obvious, (3) which affects his substantial rights . . . , and which (4) seriously impugns the fairness, integrity, or public reputation of the proceeding." United States v. Correa-Osorio, 784 F.3d 11, 18 (1st Cir. 2015).  In light of Rehaif, the

first two prongs of plain error review are satisfied.  See, e.g.,
Patrone, 985 F.3d at 85.

We have considered and rejected Austin's argument from
Gary that the district court's failure to inform him of Rehaif's
status element constitutes structural error and per se satisfies
the third prong of plain error review.[4]  See, e.g., Patrone, 985
F.3d at 86 (finding that no error in structure results from the
failure to advise a defendant of the status element of Rehaif);
Farmer, 2021 WL 567419, at *4 (reiterating the absence of
structural error where the status element was omitted from a plea
colloquy).  Thus, we consider only Austin's argument that he was
prejudiced by the district court's failure to state the status
element at his plea colloquy.  To satisfy the third prong of plain
error review on such grounds, Austin must demonstrate a reasonable
probability that he would not have pled guilty had the district
court informed him of the government's obligation to prove the
knowledge of status element of Rehaif.  Burghardt, 989 F.3d at
403; Farmer, 2021 WL 567419, at *3.

We conclude that Austin has not demonstrated such
reasonable probability.  Importantly, Austin misconstrues the
nature of the status element.  Austin suggests that Rehaif would

_____

[4] We note that the Supreme Court has granted certiorari in
the United States' appeal of the decision in Gary.  This pending
appeal does not impact our holdings in Patrone and Farmer.

- 16 -

have obligated the government to prove his "subjective knowledge that he [was] violating the law." This is not the case. Rather, Rehaif imposes a scienter of status requirement: it would require the government to prove Austin knew he was a felon. See, e.g., Burghardt, 939 F.3d at 400 (describing the omitted Rehaif element as the defendant's knowledge that he had been previously convicted of a crime "punishable by imprisonment for a term exceeding one year"). Given Austin's own statements to law enforcement that he was "'definitely' a convicted felon," it is difficult to believe that, had he been aware of Rehaif's holding, Austin would have attempted to contest the status element at trial.[5]

Furthermore, Austin received a plea agreement and ultimate sentence below the bottom of the advisory sentencing guidelines range – a range lowered by a downward adjustment for the acceptance of responsibility, which would have been forfeited had Austin not pleaded guilty. We have previously observed that where a defendant's knowledge of the status element would not alter his risk/benefit analysis in favor of going to trial, it is still

_____

[5] Indeed, the PSR indicates that Austin was twice convicted in Massachusetts of assault and battery with a dangerous weapon. That is an offense that is punishable by up to ten years of imprisonment in state prison or two and a half years of imprisonment in the House of Correction. Mass. Gen. Laws ch. 265, § 15A(b). In short, Austin was twice sentenced to crimes punishable by more than a year in prison. For one of the offenses, Austin was sentenced to a thirty-month suspended sentence and actually served that entire sentence in the House of Correction after a probation violation.

- 17 -

less probable he would have altered his plea. Id. at 403-06; Farmer, 2021 WL 567419, at *4. Given Austin's acknowledgement of his felony conviction and the favorable nature of his plea agreement, we find he has not demonstrated a reasonable probability that he would have altered his plea if the district court had informed him of Rehaif's status element. We therefore reject Austin's attempt to vacate his judgment of conviction in light of the Rehaif error at plea colloquy.

Nor do we accept Austin's invitation that we should reject our recent decision in United States v. Lara and find that the indictment's omission of the status element violated his substantial rights. 970 F.3d at 87. Quite apart from the fact that a panel is generally bound to follow a precedential panel decision, United States v. Rodriguez-Pacheco, 475 F.3d 434, 441 (1st Cir. 2007), such argument presumptively fails because a guilty plea waives all non-jurisdictional challenges to an indictment. Burghardt, 939 F.3d at 402 (citing United States v. Urbina-Robles, 817 F.3d 838, 842 (1st Cir. 2016)). Even if we were to excuse waiver, Austin's argument would not satisfy plain error review. As in Lara, the indictment of Austin was "entirely proper at the time" and "neither the prosecution nor defense counsel . . . anticipated" the result of Rehaif. 970 F.3d at 88 (citing United States v. Mojica-Baez, 229 F.3d 292, 310 (1st Cir. 2000)). As a result, there is no evidence that the indictment's omission of the

- 18 -

status element "seriously impugn[ed] the fairness, integrity, or public reputation of the proceeding."  Correa-Osorio, 784 F.3d at 18.  Accordingly, we do not discern merit in Austin's attempt to vacate his judgment of conviction in light of the Rehaif error in the indictment.

We conclude that Austin has failed to establish plain error in the district court's conduct of the plea colloquy or in the initial indictment.  We therefore reject Austin's attempt to vacate the judgment of conviction and affirm the district court's acceptance of his guilty plea.

## CONCLUSION

For the foregoing reasons, the district court's denial of Austin's motion to suppress and request for a Franks hearing, and acceptance of Austin's guilty plea are **affirmed**.