# United States Court of Appeals
## For the First Circuit

No. 20-1359

UNITED STATES OF AMERICA,

Appellee,

v.

DAVID MAGLIO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Howard, Chief Judge,
Barron, Circuit Judge,
and Singal, District Judge.[*]

Ashley P. Allen and Sibbison Dejuneas & Allen were on brief,
for appellant.
Randall E. Kromm, Assistant United States Attorney, and
Nathaniel R. Mendell, Acting United States Attorney, were on brief,
for appellee.

December 23, 2021

---

[*] Of the District of Maine, sitting by designation.

**SINGAL, District Judge.**  Following a jury trial, defendant-appellant David Maglio was convicted of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1).  He was sentenced to 96 months of imprisonment followed by 60 months of supervised release.  In this appeal, he contends that the district court erred by not suppressing evidence obtained as a result of the execution of a search warrant at his residence.  Upon due consideration of his asserted errors, we affirm.

## I.  BACKGROUND

### A.  The Search

On March 17, 2016, law enforcement executed a search warrant on Maglio's residence located at 83 Main Street in Hull, Massachusetts.  This search resulted in the seizure of a handgun, a semi-automatic rifle, ammunition, packaged marijuana, marijuana plants in various states of cultivation, and more than $5,000 in cash.

The warrant was issued by a Massachusetts state trial court, which had found probable cause to believe a search would yield evidence of criminal activity.  This finding, in turn, relied on a fourteen-page affidavit by Sergeant Detective Craig Lepro of the Hull Police Department (the "Lepro Affidavit").

## B.  The Search Warrant Application

As recounted in his affidavit, Lepro then had twenty years of law enforcement experience, including training and prior investigative experience related to indoor marijuana grows.  Based on that experience and months of investigation, Lepro asserted there was probable cause to believe there was an illegal indoor marijuana grow at 83 Main Street.  In support of that assertion, the Lepro Affidavit compiled information from a variety of sources including an informant, surveillance of the residence, as well as searches of government records, including the Massachusetts Department of Criminal Justice Information System ("CJIS"), and electricity records.

### 1.  The Informant

Lepro described in detail information obtained from an arrested informant, Vinicio Albuquerque.  As noted by Lepro, Albuquerque had an extensive criminal history, including prior charges for drug distribution and a total of 39 adult criminal appearances.

Although Lepro did not speak with Albuquerque directly, he recounted information Albuquerque provided to Deputy Sheriff John Campbell of the Essex County Sheriff's Department following his arrest on January 20, 2016.  On that day, the Danvers Police Department arrested Albuquerque at the Danvers Econo Lodge after he was found in possession of over fifteen pounds of marijuana,

along with various items used to harvest and manufacture marijuana. Albuquerque identified this marijuana as belonging to David Maglio of 83 Main Street.

Albuquerque further reported that Maglio had an indoor marijuana grow at this location with "a street value worth tens of thousands of dollars." Albuquerque also claimed that a week prior to his arrest he had observed "at least five firearms" in Maglio's basement, one of which appeared to be a compact-style, fully automatic firearm. Albuquerque indicated that marijuana was being processed at a second location in West Roxbury. As disclosed in the Lepro Affidavit, Albuquerque advised Campbell that he was informing on Maglio because Maglio would not post the $1,000 bail he needed to secure his release from the Essex County Correctional Facility.[1]

Lepro also included information culled from the police report of Albuquerque's January 20th arrest. According to that report, Albuquerque had visible bruises and abrasions, which he explained were the result of having been beaten up at 130 Grove

---

[1] Beyond disclosing Albuquerque's motivations, Lepro also disclosed Albuquerque's contacts with local law enforcement in early January 2016. These contacts included an incident in which Albuquerque was found unresponsive behind the wheel of an improperly registered Hummer. At that time, he was transported to the hospital and the vehicle was impounded. In the two days following that incident, Albuquerque had additional contacts with a different local police department, which resulted in him being transported to a shelter in Quincy.

Street in West Roxbury (which was his address in the CJIS). Albuquerque indicated that the Boston Police were aware of this incident and the marijuana situation. Danvers Police had in turn confirmed with the Boston Police Albuquerque's recent involvement in a fight.

In fact, following their response to the January 17th fight in West Roxbury, Boston Police had obtained and executed a search warrant at 130 Grove Street. Of Albuquerque's role in that search warrant, Lepro asserted that the discovery of a THC extraction lab at 130 Grove Street "demonstrates the Boston Police were able to corroborate information supplied by Albuquerque and the seizure of the illegal lab." Lepro further described Albuquerque as having "provided reliable information to law enforcement" that resulted in the "discovery of a THC lab and the prosecution of the offenders."

## 2. The Surveillance

Following the receipt of information from Albuquerque, Lepro and another detective surveilled 83 Main Street on January 29, 2016. Lepro reported observing Maglio on the premises and detecting "a strong pungent odor of fresh [m]arijuana emanating from approximately 50 feet from the property." Based on his experience, Lepro asserted that this odor was indicative of a ventilated indoor marijuana grow at 83 Main Street.

### 3.  The Records

Beyond this surveillance of the address, Lepro also confirmed that two vehicles he observed frequently parked at 83 Main Street were registered to Maglio and Erika Zerkel, respectively.  Lepro's review of available records for 83 Main Street showed Zerkel purchasing the property in September 2015 and occupying the residence with her spouse, Maglio.

Lepro also subpoenaed monthly utility bills for 83 Main Street.  From the time that Zerkel registered as the new owner of this residence, the monthly kilowatt hour (kWh) usage and the monthly amounts billed, as reported in the Lepro Affidavit, were as follows:

| | | |
|---|---|---|
| September 2015 | 172  kWh | $73.82 |
| October 2015 | 2377 kWh | $373.82 |
| November 2015 | 6661 kWh | $1,066.82 |
| December 2015 | 9090 kWh | $2,474.35 |
| January 2016 | 6302 kWh | $1,998.00 |

In Lepro's experience based on past investigations, these amounts reflected well above-average usage, as the average monthly usage in Hull was 750 kWh.  Moreover, Lepro explained that the kWh figures for 83 Main Street and their pattern of increase and later decrease indicated an indoor grow.  Lepro also sampled three other comparably sized houses in the area for the same time period and described the average monthly bills for these residences as ranging from $105.43 to $253.28.

- 6 -

The Lepro Affidavit also noted that Maglio's criminal record included 136 adult criminal appearances and 8 juvenile appearances. His convictions included unlawful possession of a firearm and ammunition, narcotics offenses, and assault with a dangerous weapon. In July 2015, Maglio was arraigned for possession with intent to distribute a controlled substance. The police report associated with this arrest (the "Rutland Report") reflected that officers had seized 59 marijuana plants from a property in Rutland, Massachusetts. According to Lepro's research, Maglio did not have any Massachusetts record of firearm ownership or medical marijuana registration.

Lepro also included information regarding a November 2015 vehicle collision at 83 Main Street. According to the responding officers, a Nissan owned by Zerkel struck another vehicle while exiting the property's driveway. The Nissan was being operated by Daniel Gruen, whose mailing address was, familiarly, 130 Grove Street, West Roxbury. Maglio was the only passenger. When the responding officer walked up the driveway to inspect the Nissan's damage, Maglio confronted the officer and told him he was not allowed on his property, becoming increasingly agitated. The officer found Maglio's behavior suspicious.

## C. The Initial Motions

In August 2017, Maglio moved for a hearing under Franks v. Delaware, 438 U.S. 154 (1978), due to alleged false statements

and omissions in the Lepro Affidavit. He also sought to suppress all evidence obtained as a result of the search of his house.

In these motions, Maglio asserted that the Lepro Affidavit had falsely portrayed Albuquerque's role in the search warrant for the THC lab at 130 Grove Street. Maglio proffered that, in reality, the relevant police reports showed that officers responding to the fracas at 130 Grove Street had discovered the THC lab in plain view and had obtained a search warrant on that basis. Maglio also asserted that Lepro had disregarded a conversation recorded in the Rutland Report, where it was intimated that Maglio had a medical marijuana registration. Maglio contended that given Lepro's review of the Rutland Report, he recklessly failed to conduct a reasonable search for Maglio's medical marijuana registration status. Maglio argued that when reformed to correct Lepro's inclusion of false information about his registration status and Albuquerque's prior cooperation, the Lepro Affidavit failed to establish probable cause for the search of 83 Main Street.

In an October 2018 oral ruling, the district court ultimately held that Maglio had not demonstrated that the challenged statements were material to the finding of probable cause. On this basis, the district court denied Maglio's motion to suppress without convening a Franks hearing.

- 8 -

## D. The Renewed Motion

A year later, while in final preparations for trial, Maglio filed a renewed and supplemental motion to suppress, which sought both a <u>Franks</u> hearing and an evidentiary hearing.

In addition to asking the district court to reconsider its prior denial, this motion asserted other errors and omissions in the underlying search warrant affidavit. Specifically, Maglio claimed inaccuracies in Lepro's analysis of the electricity records. He faulted the inclusion of past due balances, which inflated the billed amounts for multiple months, and questioned Lepro's reported average power usage of 750 kWh. He also faulted Lepro for omitting a note in the electricity records internally discussing a "high read" for 83 Main Street. Additionally, Maglio suggested that Lepro's asserted detection of marijuana odor 50 feet from the property could only be accurate if Lepro had impermissibly entered the property's curtilage.

As to the informant, Maglio refined his arguments that Albuquerque's statements lacked important indicia of reliability. He cited the lack of direct contact between Lepro and Albuquerque. He also asserted that Lepro made improper inferences regarding the source of the marijuana possessed by Albuquerque as well as what Albuquerque observed in terms of marijuana and firearms at 83 Main Street. He called into the question the timing of Albuquerque's interview and his actual motivations for informing on Maglio due

to the noted amount of Albuquerque's bail, which was had been $5,000 and was not reduced to $1,000 until January 28, 2016.

In sum, Maglio asserted that a warrant reformed to correct all of his alleged falsehoods and omissions would contain insufficient facts "to corroborate the informant or support probable cause."

At an October 2019 pretrial conference, the district court granted reconsideration and heard argument, indicating that it was considering Maglio's arguments for suppression de novo. The district court then again denied all requested relief without convening any evidentiary hearing.[2] This denial was ultimately based on a finding that the Lepro Affidavit "amply" provided probable cause and no alleged inaccuracies or omissions were individually or cumulatively material to the probable cause finding.[3]

---

[2] In addition to the oral ruling on October 22, 2019, the district court later docketed a written decision, which it characterized as containing the same findings and analysis, but adding some factual summary, discussion, and citations. We have reviewed and considered both the oral ruling and the later docketed memorandum in the context of resolving this appeal.

[3] The district court agreed with Maglio that there were some errors with Lepro's characterization of the extent of the electricity usage, including the failure to acknowledge that the amounts owed incorporated prior unpaid balances. However, as noted by the district court, the evidence proffered by Maglio would still support a finding that Maglio's electricity usage was triple that of any of the comparators.

## II. DISCUSSION

### A. Probable Cause

We review de novo the district court's conclusion that the facts of a search warrant affidavit constitute probable cause. See United States v. Austin, 991 F.3d 51, 55 (1st Cir. 2021). Probable cause for a search "exists where there is a fair probability that . . . evidence of a crime will be found in a particular place." Id. (alteration in original) (quoting United States v. Silva, 742 F.3d 1, 7 (1st Cir. 2014)). "The probable cause standard 'is not a high bar.'" United States v. Adams, 971 F.3d 22, 32 (1st Cir. 2020) (quoting Kaley v. United States, 571 U.S. 320, 338 (2014)). As we have previously explained, this is a "practical, common-sense" inquiry. United States v. Dixon, 787 F.3d 55, 59 (1st Cir. 2015) (quoting United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999)).

We normally limit our review to "the four corners of the affidavit." Austin, 991 F.3d at 55. However, in this case, the district court's ultimate determination rested on a reformed version of the Lepro Affidavit that disregarded statements about Albuquerque's role in the 130 Grove Street search, Maglio's lack of a medical marijuana registration, as well as Maglio's other asserted factual errors and omissions. Thus, we consider whether this reformed version of the Lepro Affidavit supported a finding of probable cause to search 83 Main Street.

First, putting aside any of the information provided by Albuquerque, it is undisputed that the affidavit accurately summarized Maglio's criminal history, including a pending charge related to a marijuana grow in Rutland and a previous firearms conviction. The affidavit also recounted a local police response to a motor vehicle accident at 83 Main Street, which involved a suspicious encounter with an agitated Maglio. Significantly, this accident also separately tied Maglio to a resident of 130 Grove Street -- where police found a THC lab. In summary, these unopposed portions of the affidavit depict Maglio as a person with an extensive history of relevant criminal conduct, along with recent links to illegal marijuana production, as well as demonstrated suspicious behavior when an officer approached 83 Main Street.

Turning to Albuquerque, before the district court and in this appeal, Maglio has raised specific concerns about omissions and misstatements surrounding this informant. While Maglio assails Albuquerque's credibility, his criticisms do little damage. "An informant's trustworthiness may be enhanced in a number of ways, including his willingness to reveal his identity, the level of detail in his account, the basis of his knowledge, and the extent to which his statements are against his interest." United States v. Tanguay, 787 F.3d 44, 50 (1st Cir. 2015) (citation omitted). "A probable cause finding may be based on an informant's

tip so long as the probability of a lying or inaccurate informer has been sufficiently reduced." United States v. Gifford, 727 F.3d 92, 99 (1st Cir. 2013). In addition to the factors demonstrating probable veracity cited above, we consider "whether some or all of the informant's factual statements were corroborated wherever reasonable or practicable" and "whether a law enforcement affiant assessed, from his professional standpoint, experience, and expertise, the probable significance of the informant's provided information." See id.

Here, Albuquerque's identity was revealed and he was in the custody of law enforcement. Dixon, 787 F.3d at 59 (fact that officers "would have been able to hold the [informant] responsible had he provided false information" was indicative of probable veracity). As to detail, Albuquerque told Campbell that the cultivated marijuana he was found with came from the indoor grow in Maglio's basement, and further provided a first-hand observation of firearms at this location. He also described the scale of Maglio's operation, including the involvement of a second property in West Roxbury. In short, Albuquerque indicated that he had personally observed criminal activity within 83 Main Street. See, e.g., id. (describing "specific, first-hand account of possible criminal activity" as "a hallmark of a credible tip" (quoting United States v. Greenburg, 410 F.3d 63, 67-68 (1st Cir. 2005))). Moreover, while Maglio argues that Albuquerque was self-

- 13 -

interestedly pointing the finger at Maglio, Albuquerque was potentially implicating himself in a larger marijuana conspiracy via the information he provided. Thus, Albuquerque's statements can be viewed as against his interest, which only bolsters the reliability of this information.

In addition to these indicia of trustworthiness, the affidavit independently corroborated critical portions of Albuquerque's information. For instance, other independent records corroborated his identification of Maglio as residing at 83 Main Street and Lepro observed Maglio's vehicle parked at this location on numerous occasions. See Dixon, 787 F.3d at 59 ("Corroboration of even innocent activity reported in the tip may support a finding of probable cause." (quoting Greenburg, 410 F.3d at 69)). Given this corroboration and the other above-noted indicia of credibility, the information provided by Albuquerque can be properly considered as part of the probable cause calculus.

Considering the totality of the credible evidence in the Lepro Affidavit, as reformed by the district court, we agree that ample probable cause existed to support the issuance of the search warrant for 83 Main Street.

In addition to his challenge to the district court's ultimate probable cause determination, Maglio separately contends that the district court made several erroneous factual findings that affected its outcome. We review the district court's factual

findings for clear error, see United States v. Barbosa, 896 F.3d 60, 67 (1st Cir. 2018), and find none. For the reasons already discussed, the district court's findings that Albuquerque "provided detailed information" and "had personal knowledge of the matters" he discussed with Campbell were well supported by the uncontested contents of the affidavit. Although we have said that "face-to-face contact between the agent and informant" and an agent's opportunity to personally question him generally provides indicia of that informant's reliability, see, e.g., Dixon, 787 F.3d at 59; Greenburg, 410 F.3d at 67, the absence of such an opportunity does not necessarily render the tip unreliable. Particularly here, where the tip was relayed from another officer who had such face-to-face contact with the informant. Maglio's other challenges to the court's factual findings, are similarly unconvincing. The court's reading of the affidavit was reasonable, consistent with the information provided therein, and not clearly erroneous.

### B. Lack of Hearings

Moreover, we find no error in the district court's decision to deny the motion to suppress without convening a Franks hearing or other evidentiary hearing.

### 1. Franks Hearing

As to the Franks hearing request, "we review the District Court's factual determinations in denying a motion for a Franks

- 15 -

hearing for clear error, and its determination of whether the defendant has made a substantial preliminary showing that the omitted information was material to the finding of probable cause de novo." United States v. Veloz, 948 F.3d 418, 427–28 (1st Cir. 2020) (citation omitted). "[A] defendant is not entitled to a Franks hearing as of right." Barbosa, 896 F.3d at 68. Rather,

> a defendant is entitled to an evidentiary hearing to test the veracity of a warrant affidavit if he can make a substantial showing that (1) the affiant intentionally or with reckless disregard for the truth included a false statement in the affidavit, or omitted information from the affidavit; and (2) such false statement or omitted information was material to the probable cause inquiry.

Austin, 991 F.3d at 57 (citations omitted).

Ultimately, the district court concluded that Maglio could not satisfy the second prong, materiality, either cumulatively or as to any particular alleged omission or false statement. For the same reasons supporting our finding of probable cause based on the reformed version of the Lepro Affidavit, we also find no error in the district court's conclusion that a Franks hearing was not warranted because Maglio failed to make a "substantial showing" that he could satisfy the materiality prong of the analysis.

## 2. Suppression Hearing

Finally, as to Maglio's request for an evidentiary hearing on his suppression motion, our review is for abuse of discretion. See United States v. Maldonado-Peña, 4 F.4th 1, 23

(1st Cir. 2021). Generally, a defendant must show "that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record -- most critically, he must show that there are factual disputes which, if resolved in his favor, would entitle him to the requested relief." Id. (quoting United States v. Ponzo, 853 F.3d 558, 572 (1st Cir. 2017)) (internal quotation marks and additional citations omitted). On appeal, Maglio asserts that the district court should have held an evidentiary hearing to resolve (1) the exact position from which Lepro surveilled the property; and (2) whether Albuquerque obtained the marijuana from Maglio or 130 Grove Street.[4]

Maglio argues that it is important to know from where Lepro surveilled his property because if Lepro had trespassed on the property, Lepro could have committed a warrantless search under the Fourth Amendment. In support of his request for an evidentiary hearing on this point, however, Maglio points to nothing in the record that suggests that Lepro was not where he was allowed to be. He merely argues that Lepro's exact location is unknown, which is insufficient by itself to show that "material facts are in doubt or dispute." Id. We thus do not find that the district court

---

[4] As to the need for an evidentiary hearing on the source of the marijuana possessed by Albuquerque, we alternatively deem the argument waived because it was not made to the district court. See United States v. Rodrigues, 850 F.3d 1, 13 n.6 (1st Cir. 2017).

- 17 -

abused its discretion by denying Maglio's request for an evidentiary hearing on this ground.

We also conclude that the district court did not abuse its discretion when it denied Maglio's request for an evidentiary hearing to determine where Albuquerque obtained the marijuana, as resolution of that issue in Maglio's favor would not have entitled him to suppression even if Albuquerque had obtained the marijuana from someone other than Maglio.

Accordingly, we find Maglio's various motions that ultimately sought to suppress the evidence seized from his residence were correctly denied.

### III. CONCLUSION

For the foregoing reasons, Maglio's conviction is

**<u>Affirmed</u>**.