# United States Court of Appeals
## For the First Circuit

No. 20-1903

UNITED STATES OF AMERICA,

Appellee,

v.

WILLIE RICHARD MINOR,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Lynch, Thompson, and Kayatta,
Circuit Judges.

Karen A. Pickett, with whom Pickett Law Offices, P.C. appeared
on brief, for appellant.
Benjamin M. Block, Assistant United States Attorney, with
whom Donald E. Clark, Acting United States Attorney, was on brief,
for appellee.

April 11, 2022

**KAYATTA**, <u>Circuit Judge</u>. A jury convicted Willie Minor under 18 U.S.C. § 924(a)(2) of knowingly violating 18 U.S.C. § 922(g), which prohibits nine categories of persons from possessing a firearm. On appeal, Minor asserts that the proceedings below were tainted by a series of errors relating to the mens rea required to establish a knowing violation of section 922(g). In <u>Rehaif</u> v. <u>United States</u>, 139 S. Ct. 2191, 2200 (2019), the Supreme Court held that convictions under section 924(a)(2) for knowingly violating section 922(g) require "the Government [to] prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." The "relevant category" in this instance is the category of persons who have been convicted of "a misdemeanor crime of domestic violence." 18 U.S.C. § 922(g)(9). The government charged Minor with belonging to this category based on his 2010 no-contest plea to a simple assault under Maine law, which he entered after refusing to plead guilty to a charge of domestic violence assault. But because the jury was allowed to convict Minor of knowingly violating section 922(g)(9) without finding that he knew that his assault conviction placed him in the category of persons convicted of a misdemeanor crime of domestic violence, we vacate his conviction and offer further guidance on related issues to be addressed on remand.

**I.**

We first discuss the procedural path leading to Minor's trial and the largely undisputed facts presented to the jury. We then describe the parties' debate concerning how best to apply Rehaif's holding to adjudicating a charge that a person knowingly violated section 922(g)(9), which effectively sets the stage for the issues raised in this appeal.

**A.**

Minor's federal case began with a November 2016 interview with members of the Auburn, Maine Police Department,[1] in which Minor told the officers that he owned "a Lorcin black firearm," which the officers later seized. In February 2017, a federal grand jury charged Minor under sections 924(a)(2) and 922(g)(9) with possession of a firearm by a person who had previously been convicted of a misdemeanor crime of domestic violence. The predicate offense supporting Minor's prohibited status is a June 2010 Maine conviction for Assault, Class D, committed against Minor's then-spouse. Minor was convicted on the federal possession charge after a trial in December 2017.

While his appeal from that conviction was pending, the Supreme Court issued its decision in Rehaif construing

---

[1] The reason for this interview was not elicited at Minor's trial and does not appear to bear on the instant appeal.

sections 924(a)(2) and 922(g) to require the prosecution to show that the defendant knew he belonged to the relevant category of persons prohibited from possessing a gun (thus articulating what we have called the "scienter-of-status" requirement, see United States v. Burghardt, 939 F.3d 397, 400 (1st Cir. 2019)).  In light of that ruling, the parties agreed that Minor's conviction should be vacated and the case remanded for a new trial.  The government then filed a superseding indictment that included the allegation that Minor "knew that he had been previously convicted of th[e] misdemeanor crime of domestic violence."

In the course of the proceedings leading up to his second trial, Minor raised two issues of mens rea in order to provide the foundation for defenses he intended to present at trial.  Most ambitiously, he argued that he could not be convicted unless he knew that it was unlawful for him to possess a firearm.  More narrowly, he argued that the government at least had to prove that he knew that the simple assault offense to which he had previously pleaded guilty was a misdemeanor crime of domestic violence.

The government urged the court to adopt an even narrower view of the requisite mens rea.  It argued, in essence, that it need only prove that Minor knew "the features" of his past offense that rendered it a misdemeanor crime of domestic violence, even if he did not know that, because of those features, the offense was indeed a misdemeanor crime of domestic violence.  Those features

- 4 -

were: that he had been convicted of assault, that the conviction subjected him to incarceration for one year or less, that the conviction was for causing bodily injury or offensive physical contact to another person, and that that person was his spouse at the time.

The district court ultimately accepted the government's view of the mens rea requirement. As a result, the court declined Minor's repeated request that the court instruct the jurors that they needed to find that Minor knew that his prior offense was a misdemeanor crime of domestic violence.

Minor's case proceeded to his second trial, at which he stipulated to most elements of the offense charged. He agreed that the gun was recovered from his home, was operable, and had been moved in interstate commerce, and that he had "knowingly possessed" it. Minor also stipulated to several details regarding his prior Maine assault conviction, including that the victim named in the 2009 assault complaint was his spouse at the time. As Minor maintains on appeal, his defense homed in on what he knew about his prior conviction, since he had "stipulated to literally every other aspect of the crime."

The government then introduced state-court records of Minor's prior offense. These records show that Minor was initially charged with a "Domestic Violence Assault" that occurred on August 23, 2009. The complaint alleges that the charged conduct

- 5 -

was directed at "Betty Minor." It then stated, "This conduct was committed against a family or household member as defined by [Maine law]." The judicial advice-of-rights video played at Minor's state-court arraignment on the charge of Domestic Violence Assault instructed him:

> If you are convicted of certain specific crimes, you may lose your right to purchase, possess, or own a firearm or any type of ammunition. These specific crimes include offenses that involve the use of force, or even the attempt to use physical force, or offensive physical contact, or the use, or threat to use, a deadly weapon and . . . and the victim was either your spouse [or another specified relation]. The judge can tell you whether you are charged with such a crime. If you are, I would strongly suggest you speak with an attorney before entering a plea of guilty or no contest.

In the wake of that admonition, Minor refused to plead guilty to the domestic violence charge on which he was arraigned. Subsequently, the state prosecutor successfully moved to amend the complaint to reduce the charge to "Assault, Class D" and to strike the sentence stating, "This conduct was committed against a family or household member . . . ." The docket entries characterized the revision as a motion to amend "to delete DV reference." The revised charge thus eliminated any express allegation of domestic violence, claiming only that Minor "did intentionally, knowingly or recklessly cause bodily injury or offensive physical contact to

- 6 -

Betty Minor."[2]  The judgment and commitment form had initially been printed with the offense "Domestic Violence Assault," but the words "Domestic Violence" had been crossed out by hand.  The state court records show that Minor then pleaded no contest to the assault charge in June 2010.

In his own trial testimony in 2020 on the federal gun-possession charge, Minor described his understanding of his 2010 state-court conviction:  "I was convicted of a simple assault."  But, he said, "I wasn't convicted of a domestic. . . . They removed any language . . . that it was a domestic."  Minor then related that he had told his prior counsel, "I want to make sure I'm not pleading to a domestic," "because it would have meant that I couldn't have firearms."  Minor testified that he believed he could possess a firearm and that this result had been arranged in his plea, but the court struck those answers on the government's objection, and it denied on relevance and unfair-prejudice grounds Minor's counsel's entreaty for further inquiry into Minor's belief that he could own a firearm.

Minor also sought to introduce testimony from George Hess, the lawyer who had represented him in the Maine state proceedings.  As proffered, Hess would purportedly have testified

_____

[2]  Betty Minor was also known as Bettyann Minor and Betty Ann Minor.

- 7 -

about Minor's desire "to possess a firearm" and that Minor was "unwilling to plead to a domestic violence offense." Minor further proffered that Hess would testify to representations made to him by Assistant District Attorney Nick Worden, who prosecuted Minor's misdemeanor. Specifically, ADA Worden allegedly told Hess "that Mr. Minor would still be able to possess a firearm if he pled guilty to the Class D simple assault." The district court excluded this evidence on relevance grounds.

## B.

Before trial, Minor sought jury instructions on the knowledge requirement imposed by Rehaif. He requested the jury be instructed that: "In order to find the Defendant guilty of the charged offense you must find beyond a reasonable doubt that he acted knowingly in possessing the firearm and that he knew that he belonged to the relevant category of persons barred from possessing a firearm." Later, Minor revised the latter portion of the request so that he sought instructions requiring the jury to find, for a guilty verdict, "that at the time [Minor] possessed the firearm, he knew that he had been previously convicted of a misdemeanor crime of domestic violence" and "that he knew that he belonged to the status of individuals convicted of a crime of domestic violence as defined by federal law." Minor later supplemented the "as defined by federal law" portion of that request by asking that the

court additionally read out the statutory definition of "misdemeanor crime of domestic violence," which states:

> [A] 'misdemeanor crime of domestic violence' means an offense that (i) is a misdemeanor under Federal, State, or Tribal law; and (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse . . . of the victim.

18 U.S.C. § 921(a)(33)(A).

The district court denied all of Minor's requested versions of the Rehaif instruction and ultimately instructed the jury that to find Minor guilty, it must find:

> that Willie Richard Minor knew that he had been convicted of [the specified Maine assault Class D offense], that he knew the conviction subjected him to incarceration of up to 364 days, that he knew the conviction was for causing bodily injury or offensive physical contact to another person, and that he knew the victim of the crime was his spouse at the time.[3]

---

[3] The complete instruction for the elements of the charged section 922(g)(9) offense explained that, to find Minor guilty, the jury must find:

> First, that Willie Richard Minor had been convicted as charged in the superseding indictment of assault Class D in the Maine Superior Court on June 14, 2010.

> Second, that the victim of that crime was Willie Richard Minor's spouse at the time. Minor has stipulated that he and Bettyann Minor were married from June 8, 2008, until October 4, 2016, and that the victim listed in the complaint filed on October 14, 2009, Betty Minor, was his spouse at the time.

- 9 -

At the government's request, in light of Minor's testimony, the district court also charged the jury that Minor's "belief that he could possess a firearm is not itself a defense." The jury returned a guilty verdict, and the district court subsequently sentenced Minor to time served with three years' supervised released. Minor timely appealed.

**II.**

Minor argues that the district court misapprehended Rehaif's requirement throughout the proceedings below, leading to

---

> Third, that Willie Richard Minor knew that he had been convicted of that crime, that he knew the conviction subjected him to incarceration of up to 364 days, that he knew the conviction was for causing bodily injury or offensive physical contact to another person, and that he knew the victim of the crime was his spouse at the time.
>
> Fourth, that on about November 27, 2016, Willie Richard Minor knowingly possessed the firearm described in the superseding indictment. Minor has stipulated that is so.
>
> Fifth, that the firearm satisfied the federal definition of firearm and was connected with interstate commerce. Minor has stipulated that that is so.
>
> The word knowingly means that the act was done voluntarily and intentionally, not because of mistake or accident. The Government does not have to prove that Willie Richard Minor knew that his conduct in possessing a firearm was illegal or that he knew that he was prohibited from possessing a firearm, and his belief that he could possess a firearm is not itself a defense.

- 10 -

his being convicted on insufficient evidence and improper jury instructions, among other purported errors. We review this preserved contention of legal error de novo. See United States v. Norris, 21 F.4th 188, 193-95 (1st Cir. 2021) (applying de novo standard of review to preserved challenges to sufficiency of the evidence and jury instructions). To conduct this review, we first address the application of Rehaif to section 922(g)(9) before turning to Minor's specific claims of error.

## A.

In Rehaif, the Supreme Court held that, "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2) the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200. Rehaif recognized that firearms possession may be perfectly lawful absent a status-based prohibition imposed by section 922(g). Id. at 2197. Accordingly, "[w]ithout knowledge of that status," a defendant's "behavior may . . . be an innocent mistake to which criminal sanctions normally do not attach." Id.

The defendant in Rehaif had been charged with unlawful possession due to the prohibited status specified in section 922(g)(5)(A); i.e., that of "an alien . . . illegally or unlawfully in the United States." The Court acknowledged that "whether an alien is 'illegally or unlawfully in the United States'

- 11 -

is a question of law, not fact." Id. at 2198. And while the government touted the "maxim" that "ignorance of the law" provides no defense, the Court recognized that this principle traditionally "applies where a defendant . . . claims to be unaware of the existence of a statute proscribing his conduct." Id. (internal quotation omitted). "In contrast, the maxim does not normally apply where a defendant has a mistaken impression concerning the legal effect of some collateral matter and that mistake results in his misunderstanding the full significance of his conduct, thereby negating an element of the offense." Id. (internal quotation omitted). The Court thus held that even though determining the legality of one's presence in the United States may be "a legal matter," that matter is "collateral" to a charge under section 922(g)(5)(A) because a defendant unaware of or mistaken as to the answer to this preliminary legal question "does not have the guilty state of mind that [section 922(g)]'s language and purposes require." Id.

Minor argues that whether he is properly subject to the prohibited status in section 922(g)(9) should likewise be considered a collateral legal issue, because his knowledge of that issue could render his otherwise innocent possession criminal. See Rehaif, 139 S. Ct. at 2197. Minor does not contest that his 2010 Maine conviction in fact places him within the prohibited

category of section 922(g)(9); he disputes only "that he knew he belonged to the relevant category." Rehaif, 139 S. Ct. at 2200.

Had Minor been convicted as originally charged for domestic violence assault under Maine law, none of this likely would have mattered because it would have been obvious that he knew that he had been convicted of a misdemeanor crime of domestic violence. But federal law's classification of other misdemeanors -- i.e., simple assault -- as crimes of domestic violence is "quite complex." United States v. Triggs, 963 F.3d 710, 715 (7th Cir. 2020). After all, it took three split United States Supreme Court opinions -- two decided long after Minor pled in a Maine court -- to establish the contours of how a simple assault can constitute a "misdemeanor crime of domestic violence" under section 922(g)(9), as that phrase is defined in section 921(a)(33)(A). See Voisine v. United States, 136 S. Ct. 2272, 2282 (2016) (the prior offense may qualify even if it could have been proved by showing only reckless conduct); United States v. Castleman, 572 U.S. 157, 163 (2014) (the requirement of "force" may be shown by "even the slightest offensive touching"); United States v. Hayes, 555 U.S. 415, 418 (2009) (an offense may qualify regardless of whether the domestic relationship is included as an element).

Nor does a finding that a defendant is aware of the component parts of his prohibited status necessarily mean that he

is aware of the implication of the sum of those components. In Rehaif, the defendant clearly knew that he was in the United States, and he knew all the facts that rendered that presence unlawful. See 139 S. Ct. at 2201-02 (Alito, J., dissenting). Yet the Court found that the government must show that he knew the legal import of those facts, i.e., that his presence was unlawful. Id. at 2198 (majority op.).

For the foregoing reasons, Minor's reliance on Rehaif seems persuasive. The government and our dissenting colleague nevertheless argue that we should rule otherwise. To those arguments we turn next.

**B.**

The government urges us to find that Minor need only have known of "the features" of his past offense that rendered it "within the scope of" section 921(a)(33)(A). See Staples v. United States, 511 U.S. 600, 619 (1994). The government derives this position from statements by the Supreme Court in Staples and Liparota v. United States, 471 U.S. 419 (1985), two cases in which the Court read mens rea requirements into criminal statutes that (unlike section 924(a)(2)) otherwise would not have included any.

In Staples, a defendant had been charged with possessing an unregistered machinegun in violation of the National Firearms Act, 26 U.S.C. §§ 5801-5872. With the relevant statute (unlike section 924(a)(2)) containing no express mens rea requirement, the

district court had instructed the jury that, for the mens rea element, the government need only prove that the defendant "kn[ew] that he [wa]s dealing with a dangerous device of a type as would alert one to the likelihood of regulation." 511 U.S. at 602-04. The defendant asserted that the government ought to have been required to prove more -- that he knew of the specific features of his firearm which brought it within the scope of the Act. Id. at 602. The Court agreed with the defendant's proposed version of a mens rea requirement, reasoning that the defendant "must know the facts that make his conduct illegal." Id. at 619. Notably, the defendant did not argue that the government ought to have been required to prove his knowledge of any collateral legal matter, such as that his gun in fact qualified as a machinegun under the Act.

Liparota addressed a statute that criminalized the unauthorized use of food stamps. 471 U.S. at 420. The Court there held that the offense required proving that the defendant knew his use was unauthorized, but not that the defendant "had knowledge of specific regulations governing food stamp acquisition or possession." Id. at 434. The Court has since characterized this holding in varying ways. It has said Liparota required that a defendant "kn[ew] of the facts that made the use of the food stamps unauthorized." Elonis v. United States, 575 U.S. 723, 736 (2015). More recently, the Rehaif Court cited Liparota as an example of a

mens rea requirement as to a collateral mistake of law, noting: "We held [in Liparota] that the statute required scienter not only in respect to the defendant's use of food stamps, but also in respect to whether the food stamps were used in a 'manner not authorized by the statute or regulations.'" Rehaif, 139 S. Ct. at 2198 (quoting Liparota, 471 U.S. at 425 n.9).

Essentially ignoring both how the mens rea issue arose in Staples and Rehaif's explanation of Liparota, the government argues that the district court's approach here, as captured in the jury instructions, sufficiently required the jury to find that Minor knew "the facts" that made his past offense a "misdemeanor crime of domestic violence" -- even if he did not need to know that those facts added up to a particular result. Specifically, the district court required the jury to find that Minor knew: (1) "that he had been convicted of [the prior offense]"; (2) that "the conviction subjected him to incarceration of up to 364 days"; (3) that "the conviction was for causing bodily injury or offensive physical contact to another person"; and (4) that "the victim of the crime was his spouse at the time."

This approach reflects that taken by our dissenting colleague and by the majority of an Eleventh Circuit panel in United States v. Johnson, which similarly considered an appeal from a section 922(g)(9) conviction. See 981 F.3d 1171, 1182 (11th Cir. 2020) ("[The defendant] must have known the facts that made

- 16 -

[his prior conviction] qualify as a misdemeanor crime of domestic violence."). But see id. at 1192 (Martin, J., concurring in part and dissenting in part) ("I believe the majority's approach dilutes the knowledge-of-status requirement from Rehaif that may result in the government sending people to prison for 'innocent mistake[s].'" (quoting Rehaif, 139 S. Ct. at 2197)). The Johnson majority, too, invoked the maxim that "a defendant generally must know the facts that make his conduct fit the definition of the offense, even if he does not know that those facts give rise to a crime." Id. at 1182 (majority op.) (cleaned up) (quoting Elonis, 575 U.S. at 735).

The defect in the application of this maxim to this case rests in the failure to pay heed both to the express requirement in section 924(a)(2) that violations of section 922(g) must be "knowing[]," and to Rehaif's reminder that one of the "facts" that a defendant must know in order to knowingly violate the relevant parts of section 922(g) is a conclusion of law; i.e., that "he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200. Just as the government in Rehaif could not prove a knowing violation of section 922(g)(5) without proving that the defendant knew that his presence in the United States was "illegal[] or unlawful[]," the government here need prove that Minor knew that he had been convicted of a misdemeanor crime of domestic violence.

Our own past precedent supports this conclusion. In United States v. Guzmán-Merced, 984 F.3d 18, 21 (1st Cir. 2020), we held that in order to prove a knowing violation of section 922(g)(1), the government need prove that the defendant knew a point of law, i.e., that his prior convictions were for crimes punishable by more than a year in prison. And in United States v. Patrone, 985 F.3d 81, 86 (1st Cir. 2021), we held that in order to prove a knowing violation of section 922(g)(5) the government need prove knowledge of another point of law, i.e., that the defendant knew his presence in the United States was unlawful. In so doing, we observed that a defendant noncitizen who had overstayed his visa may permissibly argue, for example, that he "believed his pending application to remain in the United States rendered his presence lawful." 985 F.3d at 86.

We have considered on our own accord trying to distinguish Rehaif from the instant case based on the fact that the prohibited status at issue in Rehaif was "being an alien . . . unlawfully in the United States," section 922(g)(5), while this case concerns section 922(g)(9), which addresses the toxic mix of firearms and domestic violence. But Rehaif's textual analysis did not rely on the particular status defined in subsection 922(g)(5). Rather, the court trained its attention on the word "knowingly" in section 924(a)(2), a term that applies equally to all violations of section 922(g). And while our dissenting colleague is correct

that Congress thought it important to keep guns out of the hands of persons convicted of domestic violence, Congress also undoubtedly thought it important to keep guns out of the hands of all persons who fall into any of the nine categories specified in section 922(g).

In sum, unless we are to engage in result-driven interpretative gymnastics, Rehaif effectively controls our treatment of this case. To establish that Minor "knowingly" violated section 922(g)(9), the government need prove that he "knew he violated the material elements of § 922(g)," Rehaif, 139 S. Ct. at 2196, which in this case means that he knew he had been convicted of a misdemeanor crime of domestic violence.

## c.

Just as Rehaif makes it not quite so easy to convict some persons under section 922(g)(5), and our following opinion in Guzmán makes it not quite so easy to convict some defendants under section 922(g)(1), so too our holding today adds to the government's burden in proving some cases involving section 922(g)(9). That being said, our dissenting colleague's cry that the sky will fall is greatly exaggerated. Our adherence to Rehaif creates no plausible defense for defendants convicted on an express charge of domestic violence. Section 922(g) also separately applies to any person subject to domestic restraining orders. See § 922(g)(8).

Even as to simple assault convictions, as a practical matter, few defendants will be able to marshal a credible case for finding that they did not know that their conviction placed them in a category of persons who could not possess a firearm. The government can rely on circumstantial evidence to prove the requisite knowledge. Rehaif, 139 S. Ct. at 2198 (quoting Staples, 511 U.S. at 615, n.11).

Notably, a section 922(g)(9) offense only occurs if the individual was represented by counsel in connection with the predicate offense or knowingly and intelligently waived the right to counsel. See 18 U.S.C. § 921(a)(33)(B)(i)(I). And competent defense counsel is usually going to advise the client of the serious collateral ramifications of conviction. See Standards for Criminal Justice Standard 14-3.2(f) (Am. Bar Ass'n 1999) ("To the extent possible, defense counsel should determine and advise the defendant, sufficiently in advance of the entry of any plea, as to the possible collateral consequences that might ensue from entry of the contemplated plea."); see also Gabriel J. Chin & Richard W. Holmes, Jr., Effective Assistance of Counsel and the Consequences of Guilty Pleas, 87 Cornell L. Rev. 697, 713–18 (2002) (surveying further professional standards and guidance that direct counsel to advise a client of a guilty plea's collateral consequences).

Minor himself only claims to have lacked the requisite knowledge upon pleading guilty to simple assault because of the

presumably unusual combination of erroneous advice given by a prosecuting attorney and an amendment of the complaint to drop references to domestic violence.

Nor would it do any good for a defendant to say that he did not know his conviction was a "misdemeanor" because he believed his conviction rendered him eligible for a lengthier sentence. Such a mistake would only place him within the category of section 922(g)(1)'s prohibition on firearms possession for those who have been convicted of crimes punishable by more than a year in prison, so he would still have the requisite mens rea for a knowing violation of section 922(g).

We do agree with the government -- indeed, we have previously said -- that it is no defense for those charged with violating section 922(g) to say that they did not know that persons convicted of misdemeanor crimes of domestic violence could not possess guns. See United States v. Austin, 991 F.3d 51, 59 (1st Cir. 2021) ("Austin misconstrues the nature of the status element. Austin suggests that Rehaif would have obligated the government to prove his 'subjective knowledge that he [was] violating the law.' This is not the case." (alteration in original)). This would be a classic "mistake of law" as to the charged statute establishing the offense -- here, section 924(a)(2) -- to which the maxim used by the government would apply. See 129 S. Ct. at 2198. Requiring proof of such knowledge, moreover, would elevate the mens rea

requirement for section 922(g) from "knowingly" to "willfully." Triggs, 963 F.3d at 714; see also Bryan v. United States, 524 U.S. 184, 191-92 (1998) ("[Generally,] in order to establish a 'willful' violation of a [criminal] statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'" (quoting Ratzlaf v. United States, 510 U.S. 135, 137 (1994))). But while a defendant need not have known that possessing firearms was unlawful, such knowledge should often suffice, a fortiori, to establish the lower requisite mens rea. Cf. United States v. MacPherson, 424 F.3d 183, 192 (2d Cir. 2005) (holding that "evidence sufficient to establish willful illegality necessarily support[ed] [a] lesser scienter requirement").

Nor is there any reason to think that Rehaif's construction of section 924(a)(2) provides materially less deterrence of gun possession by domestic abusers than does our colleague's reading. One can hardly be deterred by section 924(a)(2) if one does not know that one belongs to one of the categories of persons listed in section 922(g).

For all these reasons, our interpretation of what section 924(a)(2) requires the government to prove for a knowing violation of section 922(g)(9) simply does not run contrary to the important policy aims that gave rise to Congress's decision to punish knowing violations of section 922(g). Rather, it leaves those aims unimpeded while simultaneously understanding Congress

- 22 -

to have adhered to the "basic principle of criminal law" that "help[s] to 'separate those who understand the wrongful nature of their act from those who do not.'" Rehaif, 139 S. Ct. at 2196 (quoting United States v. X-Citement Video, Inc., 513 U.S. 64, 72–73, n.3 (1994)).

**III.**

Having determined that a conviction under sections 924(a)(2) and 922(g)(9) required the government to prove that Minor knew he had been convicted of "a misdemeanor crime of domestic violence," we turn now to Minor's specific claims of error. He contends that the government's evidence was insufficient to establish his scienter of status; that the jury instructions did not require the jury to find that element as properly construed; and that certain testimony bearing on his state of mind was improperly excluded at trial. We take these arguments in turn.

**A.**

We first consider Minor's challenge to the sufficiency of the government's evidence. The government does not dispute that this challenge was preserved. Accordingly, we review the claim de novo, evaluating the evidence "in the light most favorable to the verdict" to decide "whether 'that evidence, including all plausible inferences drawn therefrom, would allow a rational factfinder to conclude beyond a reasonable doubt that the defendant committed the charged crime.'" United States v. Torres Monje, 989

F.3d 25, 27 (1st Cir. 2021) (quoting United States v. Santos-Rivera, 726 F.3d 17, 23 (1st Cir. 2013)).  In so doing, "we do not view each piece of evidence separately, re-weigh the evidence, or second-guess the jury's credibility calls."  United States v. Acevedo-Hernández, 898 F.3d 150, 161 (1st Cir. 2018).

Here, Minor stipulated to or conceded most elements of the offense, including that he knowingly possessed the gun, that it had travelled in interstate commerce, that he had been convicted of a misdemeanor assault offense, and that the named victim in his assault complaint was his spouse at the time.  On appeal, Minor disputes only the government's proof that he knew of his prohibited status as a domestic violence misdemeanant.

On that element, the government introduced the Maine state court records, which included the initially charged offense of "domestic violence assault" against Betty Minor.  According to the transcript of Minor's arraignment on that initial charge, which the government also introduced, Minor testified that he understood he had been charged with "domestic violence assault," that it was for "intentionally, knowingly or recklessly caus[ing] bodily injury or offensive physical contact to Betty . . . Minor," and that the alleged assault was "committed against a family or household member."  The judicial advice-of-rights video played at this arraignment further informed Minor that he could lose the right to possess firearms for certain offenses involving force

against a spouse, and Minor later testified in his federal trial that he had understood this guidance.  Thereafter, the motion to amend the complaint reduced the charge to simple assault and specifically struck the language alleging that "[t]his conduct was committed against a family or household member as defined by [Maine law]," but it did not disturb the allegation that Minor "intentionally, knowingly or recklessly cause[d] bodily injury or offensive physical contact to Betty Minor."

The unusual sequence of events leading to Minor's state-court plea certainly provides him with a strong basis on which to claim that he did not know that even the reduced assault charge marked him as one convicted of a misdemeanor crime of domestic violence.  But having a strong argument does not mean that the other side's evidence is not minimally sufficient.  Accordingly, because the records presented at trial do not demonstrate that the amended complaint removed the name of the  victim, because Minor has stipulated that this victim was his spouse at the time, and because Minor had been informed of and understood the risk of losing his rights for offenses involving the use of force against a spouse, a jury could have plausibly inferred from this evidence that Minor also knew that his conviction on the assault charge, even as amended, was itself also a conviction for a misdemeanor crime of domestic violence.

While Minor testified in his federal trial that he "wasn't convicted of a domestic," that he believed his spouse's name had also been struck from the complaint, and that he understood that the charge had been pleaded down, a rational factfinder could nonetheless discredit such countervailing testimony. In light of our standard of review, we "resolve all credibility disputes in [the government's] favor," and must "choose the inference 'most compatible' with the jury's guilty verdict when confronted with competing inferences." Acevedo-Hernández, 898 F.3d at 161 (quoting United States v. Acosta-Colón, 741 F.3d 179, 191 (1st Cir. 2013)). Accordingly, we find that the government presented sufficient evidence for a rational factfinder to find Minor possessed a firearm while knowing that he had been convicted of a misdemeanor crime of domestic violence.

**B.**

We next apply our view of the scienter-of-status requirement to Minor's preserved challenge to the jury instructions. See United States v. Godin, 534 F.3d 51, 61 (1st Cir. 2008) ("[A] court may still find that an erroneous jury instruction constitutes reversible error after finding that [the] evidence was sufficient to support the verdict." (citing United States v. Baldyga, 233 F.3d 674, 682 n.8 (1st Cir. 2000))). Minor contends that the instructions "omitted or materially altered [an] element[] of [his] offense," and he preserved this objection by

renewing it after the trial court charged the jury, so we review this challenge de novo. United States v. Ford, 821 F.3d 63, 67–68 (1st Cir. 2016).

As discussed, the district court's instructions tracked the approach the government now advances on appeal: that Minor needed to know only the features of his prior conviction that rendered it a qualifying domestic violence misdemeanor. Accordingly, as to the scienter-of-status element, the jury was required to find only that:

> Willie Richard Minor knew that he had been convicted of [the specified Maine assault Class D offense], that he knew the conviction subjected him to incarceration of up to 364 days, that he knew the conviction was for causing bodily injury or offensive physical contact to another person, and that he knew the victim of the crime was his spouse at the time.

In giving this instruction, the district court rejected Minor's request to instruct the jury that a guilty verdict required finding "that at the time [Minor] possessed the firearm, he knew that he had been previously convicted of a misdemeanor crime of domestic violence." For the reasons stated above, the court erred when it allowed the jurors to convict without finding that Minor knew that his state-court conviction placed him in the relevant category of persons barred from possessing a firearm, i.e., persons convicted of misdemeanor crimes of domestic violence.

Having found error, we consider whether it was harmless. Ford, 821 F.3d at 68. "A jury instruction error is not harmless if 'the record contains evidence that could rationally lead to a contrary finding' in the absence of the error." Id. (quoting Godin, 534 F.3d at 56). Thus, an instructional error "on an element of the offense can be harmless beyond a reasonable doubt, if, given the factual circumstances of the case, the jury could not have found the defendant guilty without making the proper factual finding as to that element." United States v. McLellan, 959 F.3d 442, 466 (1st Cir. 2020) (quoting United States v. Doherty, 867 F.2d 47, 58 (1st Cir. 1989)). The government has presented no argument that the jury instructions here, even if erroneous, were nonetheless harmless -- and for good reason. Minor testified directly to his belief that he "wasn't convicted of a domestic." And given the amendment of the assault complaint and the alleged information conveyed to Minor, it was certainly quite possible that a properly instructed jury could rationally find that he did not have the necessary mens rea. The instructional error was thus not harmless, so Minor's conviction must be vacated and his case remanded for a new trial. See Ford, 821 F.3d at 68.

## C.

We turn finally to Minor's claims of evidentiary error. While we have already determined that Minor is entitled to a new trial, these evidentiary disputes are likely to reoccur below, so

- 28 -

we resolve them now to provide clarity for the further proceedings. Minor points to two categories of evidence excluded by the court below. First, the court barred Minor "from testifying to what he believed about whether he was allowed to possess a gun after the simple assault conviction." Second, the court denied Minor's entreaties to present evidence of an "entrapment by estoppel" defense, including testimony from his state-court counsel regarding ADA Worden's purported representation that Minor would still be able to possess firearms if he pleaded to the reduced simple assault charge. We consider these challenges in turn.

**1.**

The government's primary argument below for barring Minor from testifying to his belief about whether he could lawfully possess firearms was that such evidence would be irrelevant because the government was not required to prove Minor knew his possession was unlawful. See Fed. R. Evid. 401, 402; Austin, 991 F.3d at 59. The district court agreed with this rationale and excluded the evidence. When Minor's counsel renewed this line of inquiry during Minor's testimony, the court supplemented the basis for excluding this evidence by further agreeing with the government that such evidence would also be unfairly prejudicial as an appeal to jury nullification. See Fed. R. Evid 403 (providing a mechanism for courts to exclude even "relevant evidence[,] if its probative value

is substantially outweighed by a danger of . . . unfair prejudice . . . [or, among other things,] misleading the jury").

Minor counters, as he did below, that even if his belief as to the lawfulness of his gun possession would not represent a defense in itself, this belief is nonetheless relevant because it bears indirectly but probatively on the appropriate mens rea inquiry -- that is, it tends to demonstrate that Minor did not know he had been convicted of a misdemeanor crime of domestic violence. This tendency can only be shown if Minor understood the relationship between a domestic violence conviction and the ability to possess firearms. As we have explained, Minor testified that he did understand this relationship at the time of his prior conviction.

This argument for relevance further relies on the legal premise that scienter of status for section 922(g)(9) requires knowing one's past conviction represents a misdemeanor crime of domestic violence, rather than simply knowing certain features of the past conviction. And, as we have found that premise to be correct, we likewise agree that Minor's knowledge of whether he could possess a firearm may be relevant to establishing whether he knew that he had been convicted of a misdemeanor crime of domestic violence.

Finding relevance does not, however, end the inquiry into this testimony, because the district court also found that

this evidence would be unfairly prejudicial. See United States v. Centeno-González, 989 F.3d 36, 53 (1st Cir. 2021) ("Even when evidence is proffered by the defense, a district court maintains 'general discretion to exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice."'" (quoting United States v. DeCologero, 530 F.3d 36, 60 (1st Cir. 2008))). Specifically, the district court explained to Minor's counsel that soliciting this testimony would be:

> an invitation at that point to jury nullification because it's not an element of the crime, and the Government has to prove the elements of the crime. And you're able to challenge all of th[os]e things, including what he believed about the nature of his conviction, but what you're not able to do is put in that he thinks that he was allowed to have a gun because that can only be appealing to sympathy and jury nullification.

We do not doubt that the proffered testimony might cause some prejudice. But, the court to date has conducted this balancing with one empty scale, as it incorrectly understood the testimony to have no relevance and thus no probative value. So, on remand, Rule 403 will require the court to weigh the testimony's probative value -- aided by our explication of its admittedly indirect relevance -- against the possible unfair prejudice or confusion.

Minor also challenges the district court's decision barring him from introducing certain testimony from his state-court counsel Hess about representations purportedly made by ADA Worden, the Maine prosecutor of Minor's assault charge.[4]  The district court ruled that this proffered evidence would be irrelevant because any representations by ADA Worden would not give rise to a valid entrapment-by-estoppel defense, Minor's only argued-for basis for this evidence.[5]  On appeal, Minor sets aside

---

[4]  The district court characterized this proffered evidence as:

> testimony by Attorney George Hess that with respect to the underlying state misdemeanor crime that Assistant DA Nicholas Worden said to him that if Mr. Minor pleaded down to the simple assault rather than the domestic violence assault under state law that he would still be able to possess a firearm even under federal law.

[5]  Entrapment by estoppel may be available as a defense in "certain, relatively narrow, circumstances."  United States v. Smith, 940 F.2d 710, 714 (1st Cir. 1991).  In considering this defense, courts "must ask whether [the defendant] was advised by a government official that the act was legal, whether [he] relied on that advice, whether that reliance was reasonable, and whether, given that reliance, prosecution of the defendant would be unfair." Id. at 715.  The defense "generally requires that the misleading statement come from an official representing the sovereign bringing the prosecution, [here], a federal official."  United States v. Sousa, 468 F.3d 42, 46 (1st Cir. 2006).  The district court found the proffered evidence of a state official's (ADA Worden's) representations insufficient to establish the defense, and Minor presents us no occasion to revisit our jurisprudence on this issue, as he has apparently abandoned on appeal his contention

the argument that he is entitled to present an entrapment-by-estoppel defense and hangs his case for presenting the proffered evidence instead on its relevance for his scienter of status. While Minor did not argue precisely this basis for the proffered evidence below, the government has not argued that Minor waived his argument. Moreover, the identical issue will most certainly arise afresh at any new trial. We therefore proceed to consider his argument on appeal for the prudential purpose of providing guidance in subsequent proceedings below.

The government relies on its reading of the scienter-of-status requirement to contend that whatever ADA Worden may have told Minor about his ability to possess firearms is irrelevant, reasoning that "the prosecutor's purported misstatement would not have deprived Minor of any of the knowledge about his conviction that would place him in the category of a domestic violence misdemeanant." But we have determined that the mens rea element for proving a knowing violation of section 922(g)(9) requires more than knowledge of the features of one's prior conviction: It requires knowledge that that prior conviction was for a misdemeanor crime of domestic violence.

---

that the challenged testimony should have been admissible for the purposes of presenting an entrapment-by-estoppel defense.

Thus, while it may be true that ADA Worden's representations would not have changed Minor's awareness that his prior conviction involved the use of force or that the victim was his spouse, such representations may very well have borne on whether Minor knew that the conviction qualified as a misdemeanor crime of domestic violence even in the wake of the amendment dropping the so-named charge. If Minor knew that a domestic violence conviction would prevent him from possessing firearms -- which he does claim to have known -- then any representations that he would remain able to possess firearms could reasonably have caused him to believe the reduced charge must not qualify as "a domestic." Certainly, if the prosecutor had told Minor that his simple assault conviction prevented him from possessing firearms, the government would reasonably argue that such a warning may well have alerted Minor that his conviction was a misdemeanor crime of domestic violence, since he knew that conviction for such would bar him from possessing a firearm.

We therefore find that the proffered evidence of representations made by ADA Worden in discussions leading up to Minor's 2010 conviction would be relevant to Minor's knowledge that he belonged in the category of persons barred from possessing firearms, and that excluding such evidence solely on lack-of-relevance grounds would be an abuse of discretion. In so finding,

however, we express no view on any other arguments against the admissibility of such evidence that have not been presented to us.

**IV.**

For the foregoing reasons, we <u>vacate</u> Minor's conviction under sections 924(a)(2) and 922(g)(9) and <u>remand</u> for further proceedings in accordance with this opinion.

**- DISSENTING OPINION FOLLOWS -**

**LYNCH**, **Circuit Judge, dissenting**. With respect, I dissent. The majority misreads Rehaif v. United States, 139 S. Ct. 2191 (2019) and other binding Supreme Court cases. The majority's erroneous decision creates a circuit split. It will have the unfortunate consequence of impairing efforts to prevent instances of domestic violence within the jurisdictions which comprise the First Circuit.

In 1996, Congress expanded the federal firearm prohibition to include persons convicted of "a misdemeanor crime of domestic violence." 18 U.S.C. § 922(g)(9). Congress had recognized that existing felon-in-possession laws "were not keeping firearms out of the hands of domestic abusers," as "many people who engage in serious spousal or child abuse ultimately are not charged with or convicted of felonies." United States v. Hayes, 555 U.S. 415, 426 (2009) (second quoting 142 Cong. Rec. 22985 (1996) (statement of Sen. Lautenberg)).[6] Further, "only about one-third of the States had criminal statutes that specifically proscribed domestic violence,"[7] and even in those

_____

[6] In 1996, a gun apparently was present in approximately 150,000 cases of spousal abuse each year. That is why the amendment was enacted. Proponents of section 922(g)(9) sought to "close this dangerous loophole," and remove any "margin of error when it comes to domestic abuse and guns." 142 Cong. Rec. 22986 (statement of Sen. Lautenberg). They drafted an "amendment [to] say[]: Abuse your wife, lose your gun . . . no ifs, ands, or buts." Id.

[7] By 2013, still only about half the states had such laws. See C. Reinhart, Chief Attorney, States with Specific Domestic Violence

states, "domestic abusers were (and are) routinely prosecuted under generally applicable assault or battery laws." Id. at 427. So, "Congress enacted [section] 922(g)(9) in 1996 to bar those domestic abusers convicted of garden-variety assault or battery misdemeanors . . . from owning guns." Voisine v. United States, 579 U.S. 686, 136 S. Ct. 2272, 2280 (2016).

Defendant Willie Richard Minor's criminal history reflects several instances of domestic abuse and a propensity toward violence.[8] Relevant here, in 2009, Minor was charged under Maine law with "domestic violence assault," Me. Rev. Stat. Ann., tit. 17-A, § 207-A(1)(A), having caused bodily injury or offensive physical contact to his then-wife.[9] Months later, he pleaded nolo contendere to simple assault under Maine law, Me. Rev. Stat. Ann., tit. 17-A, § 207(1)(A), and the named victim of the offense remained his then-wife. In 2016, Minor admitted to state law enforcement that he owned a firearm. The matter was referred for federal prosecution, and Minor was convicted in federal court following a jury trial of knowingly possessing a firearm as a

---

Crimes, 2013-R-0157 (Feb. 26, 2013) cga.ct.gov/2013/rpt/2013-R-0157.htm.

[8] Minor has been arrested and/or formally charged eight times with conduct that appears to involve domestic violence or assault.

[9] His then-wife had reported to police that Minor hit her and pushed her into a metal shelf.

domestic violence misdemeanant, in violation of 18 U.S.C. § 922(g)(9).

At the trial, Minor had admitted he knowingly possessed the firearm. He also had admitted he knew he previously was convicted of misdemeanor assault under Maine law, and the victim was his then-wife. Acknowledging, as it must, that this is sufficient evidence to support Minor's section 922(g)(9) conviction, the majority nonetheless vacates the conviction based on what it says was an error in the district court's jury instructions. The district court had instructed the jury that it must find, which it did, that Minor knew all of the features necessary to render his prior Maine conviction a domestic violence misdemeanor under section 922(g)(9). The majority says this is not enough, and under Rehaif, that the jury should have been instructed further to find Minor knew, legally, that his state court conviction for assaulting his then-wife constituted a "misdemeanor crime of domestic violence" under federal law. In my view, the majority is clearly wrong that Rehaif's knowledge-of-status element requires the defendant to have such in-depth legal knowledge to be convicted under section 922(g)(9). Further, the majority opinion will create an unfortunate loophole in efforts to protect victims of domestic violence. See 142 Cong. Rec. 22987

(statement of Sen. Murray) ("[T]he gun is the key ingredient most likely to turn a domestic violence incident into a homicide.").

I dissent.

## I.

The district court had instructed as to Rehaif's knowledge-of-status element that the jury must find, as it did, that Minor knew: (1) "he had been convicted of [the state misdemeanor offense]"; (2) "the conviction subjected him to incarceration of up to 364 days"; (3) "the conviction was for causing bodily injury or offensive physical contact to another person"; and (4) "the victim of the crime was his spouse at the time." The majority holds this was insufficient, and that the district court was required further to instruct the jury, as requested by Minor, that it must find Minor knew his Maine violent misdemeanor against his then-wife specifically qualified as a "misdemeanor crime of domestic violence" under 18 U.S.C. §§ 921(a)(33)(A), 922(g)(9). I strongly disagree.[10]

---

[10] The majority and I agree the district court properly declined to instruct the jury that it must find Minor knew he was prohibited from possessing a firearm, as ignorance of the law is no defense. See United States v. Austin, 991 F.3d 51, 59 (1st Cir. 2021) ("[Defendant] suggests that Rehaif would have obligated the government to prove his 'subjective knowledge that he [was] violating the law.' This is not the case." (alteration in original)).

- 39 -

This court follows a "two-tiered" standard in reviewing preserved claims of instructional error: "we consider de novo whether an instruction embodied an error of law, but we review for abuse of discretion whether the instructions adequately explained the law or whether they tended to confuse or mislead the jury on the controlling issues." United States v. Symonevich, 688 F.3d 12, 24 (1st Cir. 2012) (quoting United States v. Jadlowe, 628 F.3d 1, 14 (1st Cir. 2010)) (internal quotation marks omitted). When a district court declines to give a requested instruction, that refusal constitutes error only if the proposed instruction was "(1) correct as a matter of substantive law, (2) not substantially incorporated into the charge as rendered, and (3) integral to an important point in the case." Id.

The question ultimately is whether "the instructions adequately illuminate the law applicable to the controlling issues in the case without unduly complicating matters or misleading the jury." United States v. DeStefano, 59 F.3d 1, 3 (1st Cir. 1995). The district court's instructions did exactly this and no more was needed.

A.

Rehaif's knowledge-of-status element was substantially incorporated into the charge as rendered. I begin with the definition of the relevant status, i.e., "misdemeanor crime of

- 40 -

domestic violence," to determine the elements of the offense Minor had to be aware of.

For unlawful possession purposes, Congress defined "misdemeanor crime of domestic violence" as any misdemeanor under state or federal law that "has, as an element, the use or attempted use of physical force" and is "committed by a current or former spouse, parent, or guardian of the victim." 18 U.S.C. § 921(a)(33)(A). In United States v. Hayes, the Supreme Court considered whether this definition would include, as here, any misdemeanor battery where "the battered victim was in fact the offender's spouse," or whether "to trigger the possession ban, . . . the predicate misdemeanor [must] identify as an element of the crime a domestic relationship between aggressor and victim." 555 U.S. at 418. The defendant in that case was challenging his section 922(g)(9) unlawful possession conviction because his predicate battery conviction did not have as an element a domestic relationship between aggressor and victim, although the victim in his case was his then-wife. Id. at 418-19. The Court rejected his argument and held that a domestic relationship "need not be a defining element of the predicate offense" in a section 922(g)(9) prosecution. Id. at 418. Rather, a misdemeanor crime of domestic violence has only two elements: (1) "the use or attempted use of physical force, or the threatened use of a deadly weapon," and (2) the crime "must be 'committed by' a person who has a specified

domestic relationship with the victim." Id. at 421 (quoting section 921(a)(33)(A)).

The Court in Hayes went on to clarify that these elements are satisfied so long as the government "charge[s] and prove[s] a prior conviction that was, in fact, for an offense . . . committed by the defendant against a spouse or other domestic victim." Id. at 421 (ellipses in original) (internal quotation marks omitted). The Court cited the law's legislative history in support, explaining that "[c]onstruing [section] 922(g)(9) to exclude the domestic abuser convicted under a generic use-of-force statute (one that does not designate a domestic relationship as an element of the offense) would frustrate Congress' manifest purpose." Id. at 426-27; see also id. at 427 ("[W]e find it highly improbable that Congress meant to extend [section] 922(g)(9)'s firearm possession ban only to the relatively few domestic abusers prosecuted under laws rendering a domestic relationship an element of the offense."); id. ("Even in [the one-third of States with statutes specifically proscribing domestic violence], domestic abusers were (and are) routinely prosecuted under generally applicable assault or battery laws.").

Seven years later, the Supreme Court upheld the application of section 922(g)(9) to the exact underlying assault statute at issue in this case: section 207 of the Maine Criminal Code. Voisine, 136 S. Ct. at 2272; Me. Rev. Stat. Ann., tit. 17-

A, § 207(1)(A). The state statute makes it a misdemeanor to "intentionally, knowingly or recklessly cause[] bodily injury or offensive physical contact to another person." Voisine, 136 S. Ct. at 2277 (brackets in original) (quoting Me. Rev. Stat. Ann., tit. 17-A, § 207(1)(A)). A domestic relationship between the assailant and victim is not an element of the offense, but the use of physical force is. Id. at 2278. The Court held that the defendant's possession of a gun following his conviction under section 207(1)(A) for recklessly assaulting an individual who happened to be a domestic relation violated section 922(g)(9). Id. at 2282. The Court noted that "Congress enacted [section] 922(g)(9) in order to prohibit domestic abusers convicted under run-of-the-mill misdemeanor assault and battery laws from possessing guns." Id. at 2278.

Rehaif did not overrule these precedents; rather, it added a knowledge-of-status element. The precise holding in Rehaif requires the jury to find only "that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200; see also Wooden v. United States, 142 S. Ct. 1063, 1076 (Kavanaugh, J., concurring) ("The deeply rooted presumption of mens rea generally requires the Government to prove the defendant's mens rea with respect to each element of a federal offense, unless

- 43 -

Congress plainly provides otherwise." (citing Rehaif, 139 S. Ct. at 2195)).

The district court here properly instructed the jury that it must find Minor knew the elements of his prior offense (including what the majority calls "collateral legal issues") that rendered him a domestic violence misdemeanant, i.e., that he previously was convicted of a misdemeanor, and that the conviction was for causing bodily injury to his then-wife. See Hayes, 555 U.S. at 421; see also United States v. Johnson, 981 F.3d 1171, 1182 (11th Cir. 2020) ("[Under Rehaif,] the defendant must have known that he was convicted of a misdemeanor, and he must have known the facts that made that crime qualify as a misdemeanor crime of domestic violence.").

Contrary to Minor's argument, this charge did not "t[ake] away the jury's ability to consider whether Mr. Minor acted with the requisite [knowledge]." The instructions appropriately set forth the elements of a "misdemeanor crime of domestic violence," and asked whether Minor was aware of those elements.[11] Cf. Elonis v. United States, 575 U.S. 723, 735 (2015) ("[A] defendant generally must 'know the facts that make his conduct fit

---

[11] Had the district court instead instructed only that the jury must find Minor knew he was a domestic violence misdemeanant, the jurors likely would not have understood the instructions. There was no error in the district court's decision to convert legal jargon into a digestible definition for the jurors.

the definition of the offense.'" (quoting Staples v. United States, 511 U.S. 600, 607 n.3 (1994))); Liparota v. United States, 471 U.S. 419, 434 (1985) ("To prove that petitioner knew that his acquisition or possession of food stamps was unauthorized, for example, the Government need not show that he had knowledge of specific regulations governing food stamp acquisition or possession . . . Rather, as in any other criminal prosecution requiring mens rea, the Government may prove by reference to facts and circumstances surrounding the case that petitioner knew that his conduct was unauthorized or illegal.").

B.

The majority incorrectly holds -- in the same breath that it acknowledges ignorance of the law is no defense -- that the jury should have been required to find further that Minor knew the "legal import" of his prior state conviction for unlawful possession purposes. In support, the majority states that the Rehaif Court treated the prohibited status specified in section 922(g)(5)(A) -- "an alien . . . illegally or unlawfully in the United States" -- as a collateral legal matter, knowledge of which the defendant was required to have.[12] Rehaif, 139 S. Ct. at 2198.

_____

[12] The majority states that "in Rehaif, the defendant clearly knew that he was in the United States, and he knew all the facts that rendered that presence unlawful. . . . Yet the Court found that the government must show that he knew the legal import of those facts." This is misleading. The issue in Rehaif was that the trial court explicitly instructed that the jury need not find the

- 45 -

The majority misreads Rehaif.  The Court had "express[ed] no view

. . . about what precisely the [jury must find as to] a defendant's

knowledge of status in respect to other [section] 922(g) provisions

not at issue [in that case]," noting the dissent's criticism of

applying this rule to the other statuses listed in section 922(g).

Id. at 2200.

The majority's position as to section 922(g)(9) is

untenable.  The majority may be correct that Rehaif's knowledge-

of-status element for section 922(g)(9) requires that the

defendant know some collateral legal issues, such as that his prior

conviction was a misdemeanor, and that an element of the offense

was the use of physical force.  See Hayes, 555 U.S. at 421.

Requiring knowledge of such legal facts would help prevent against

convicting "innocent minds" similar to the "alien who was brought

into the United States unlawfully as a small child" that the Rehaif

majority was concerned about.  Rehaif, 139 S. Ct. at 2198.  But

Rehaif does not require for a section 922(g)(9) conviction the

government to prove, and the jury to find, that the defendant had

specific legal knowledge that his prior state conviction fell

defendant knew he was in the country unlawfully.  139 S. Ct. at
2194.  In holding this was error, the Supreme Court did not state
specifically what the jury was required to find as to the
knowledge-of-status element, nor did it conduct the harmless error
analysis to determine whether the record showed the defendant had
such knowledge.  Id. at 2200.

within the definition of "misdemeanor crime of domestic violence" set forth in section 921(a)(33)(A).

i.

Supreme Court precedent dictates that a defendant typically is charged only with knowing "the facts that make his conduct fit the definition of the offense," and not "that those facts give rise to a crime." Elonis, 575 U.S. at 735 (quoting Staples, 511 U.S. at 608 n.3). Yet the majority's unfortunate holding will require the government to prove in a section 922(g)(9) prosecution the defendant knew his prior state conviction barred him from possessing a firearm. Cf. Austin, 991 F.3d at 59 (holding a defendant need not know he is a prohibited person to be convicted of unlawful possession under section 922(g)). It cannot reasonably be said in a section 922(g)(9) prosecution that a defendant's status as a domestic violence misdemeanant is itself "collateral" to the offense. Unlike the legality of an alien's presence in the United States, a defendant's status as a domestic violence misdemeanant under section 922(g)(9) is tied specifically to the unlawful possession statute. See 18 U.S.C. §§ 921(a)(33)(A), 922(g)(9). The status (as opposed to its elements) has no legal import other than to prohibit certain individuals from possessing firearms.

The majority tries to avoid this reasoning by misreading Liparota v. United States. 471 U.S. 419. The Court in Liparota

held that the offense of "knowingly us[ing], transfer[ing], acquir[ing], alter[ing], or possess[ing] [Food Stamps] in any manner not authorized by [law]" required proof the defendant knew his use of food stamps was unauthorized. Id. at 420, 423-25. The Court there clarified that the government could establish such knowledge "by reference to facts and circumstances surrounding the case," and that the defendant need not have "knowledge of specific regulations governing food stamp acquisition or possession." Id. at 434. The Rehaif majority relied on Liparota for the premise that a criminal defendant can be charged with knowledge of certain collateral legal matters without violating the maxim that ignorance of the law is no defense, 139 S. Ct. at 2198, and the Court in Elonis construed Liparota as requiring "knowledge of the facts that made the use of the food stamps unauthorized," 575 U.S. at 736.

After Liparota,[13] the Supreme Court considered in Staples whether there was a knowledge element in the offense of unlawful possession of an unregistered machinegun, and what proof the element would require. 511 U.S. at 602. The Court held there was, stating the government must prove the defendant knew only that "the weapon he possessed had the characteristics that brought

---

[13] The majority analyzes these precedents in reverse chronological order.

it within the statutory definition of a machinegun." 511 U.S. at 602. The Court did not hold the defendant needed to know the statutory definition of a machinegun. Id. at 619; see also id. at 622 n.3 (Ginsburg, J., concurring) ("The mens rea presumption requires knowledge only of the facts that make the defendant's conduct illegal, lest it conflict with the related presumption . . . that, ordinarily, 'ignorance of the law or a mistake of law is no defense to criminal prosecution.'" (quoting Cheek v. United States, 498 U.S. 192, 1999 (1991))).

The majority contends Rehaif's reading of Liparota required the government to prove, and the district court to have instructed the jury it must find, that Minor knew his prior state conviction qualified specifically as a misdemeanor crime of domestic violence under federal law. This is incorrect. The correct approach to the knowledge-of-status element under the precedents just described is the one taken by the Eleventh Circuit in United States v. Johnson. 981 F.3d 1171.

In Johnson, the defendant was found guilty of violating section 922(g)(9) for possessing a firearm despite having been previously convicted of a misdemeanor battery against his wife. Id. at 1176. Similar to here, it was stipulated in Johnson that the defendant knew he previously had been convicted of "a misdemeanor for engaging in physical violence against his wife." Id. at 1178. The defendant nonetheless brought a sufficiency-of-

the-evidence challenge as to Rehaif's knowledge requirement because he did not know he was legally prohibited from possessing the firearm. Id. at 1178, 1188-89. The Eleventh Circuit rejected the challenge. "Applying the principles from the teachings of Rehaif, Liparota, Elonis, and Staples to Section 922(g)(9)'s status requirement," the Eleventh Circuit concluded the defendant "must have known that he was convicted of a misdemeanor, and he must have known the facts that made that crime qualify as a misdemeanor crime of domestic violence." Id. at 1182. This requires the defendant to know a collateral legal matter, i.e., that his prior conviction was a misdemeanor, without requiring the defendant know of the specific statute defining "misdemeanor crime of domestic violence." Cf. Liparota, 471 U.S. at 434. Knowledge of the facts surrounding the prior misdemeanor conviction would be sufficient. Cf. id.

In line with Rehaif and the other controlling Supreme Court law, the court then held that

> a person knows he is a domestic-violence misdemeanant, for Rehaif purposes, if he knows all the following: (1) that he was convicted of a misdemeanor crime, (2) that to be convicted of that crime, he must have engaged in at least "the slightest offensive touching," United States v. Castleman, 572 U.S. 157, 163, 134 S. Ct. 1405, 188 L. Ed. 2d 426 (2014) (internal citations omitted), and (3) that the victim of his misdemeanor crime was, as relevant here, his wife.

- 50 -

Johnson, 981 F.3d at 1175.  The defendant in Johnson, just as Minor, knew these material facts, so the court affirmed his conviction and sentence.

This case is distinguishable from our decisions in United States v. Guzmán-Merced, 984 F.3d 18 (1st Cir. 2020) and United States v. Patrone, 985 F.3d 81 (1st Cir. 2021) upon which the majority relies.  The question in both those cases was whether there was a "reasonable probability" the defendant "would not have pled guilty had he been advised of th[e] essential [mens rea] element of the government's burden of proof," Guzmán-Merced, 984 F.3d at 19; see also Patrone, 985 F.3d at 83, not what was required to prove the essential mens rea element.[14]

This court vacated the defendant's guilty plea, conviction, and sentence in Guzmán-Merced because it found the record lacking as to whether the defendant knew he previously was convicted of felonies as required for conviction under section 922(g)(1).  There was doubt as to whether the defendant knew the material collateral issue that made his predicate offenses felonies, namely, that they were punishable by more than one year

---

[14]  This court held in Patrone that the Rehaif error would have no effect on the defendant's decision to plead guilty because he also had been charged with a "related and more serious drug charge, for which the government's proof was overwhelming," leaving the defendant with "no reasonable option but to plead guilty."  985 F.3d at 86.

in prison.  The doubt was because the defendant had not served any time in prison for his prior offenses, he was eighteen years old when convicted, and "he ha[d] a limited education and diagnosed learning disabilities."  Guzmán-Merced, 984 F.3d at 20.  Here, the district court's instructions did not leave room for such doubt. The charge required the jury to determine whether Minor knew the material elements (collateral legal issues and otherwise) that made his prior state conviction a misdemeanor crime of domestic violence.  The district court asked the jury whether Minor knew he previously was convicted of a misdemeanor, whether the offense involved the use of physical force to another, and whether the victim happened to be a domestic relation.  The jury found that Minor had such knowledge,[15] as it was undisputed at trial that, at the time he possessed a firearm, Minor knew he previously was convicted of a misdemeanor crime of violence under Maine law, and that the victim of the offense was his then-wife.[16]

---

[15] Noteworthy, unlike the defendant in Guzmán-Merced who had limited education, Minor has an associate's degree in applied science.

[16] For similar reasons, United States v. Triggs, 963 F.3d 710 (7th Cir. 2020), the out-of-circuit opinion on which Minor relies, is inapposite and unpersuasive.  Unlike Minor, who was found guilty by a jury on remand after the Supreme Court rendered its decision in Rehaif, the defendant in Triggs had pled guilty to violating section 922(g)(9) before Rehaif and, afterwards, the government conceded a Rehaif error.  Id. at 714, 716.  Also notable, in vacating the defendant's conviction, the Seventh Circuit primarily relied on the "comparative complexity" of the misdemeanor crime of violence definition in 18 U.S.C. § 921(a)(33), id. at 716, but

As the majority admits, the definition of "misdemeanor crime of domestic violence" is "quite complex." The jury here was properly instructed, and found beyond a reasonable doubt, that Minor knew he had been convicted of a crime of violence, to wit: assault; that the crime was a misdemeanor; that the person he assaulted was his wife; and thus, that he knew he had been convicted of a misdemeanor crime of domestic violence. The majority rules this was not enough, and that the instructions had to provide Minor knew more than that.[17] The majority's rule risks rendering section 922(g)(9) a near nullity, and defeating Congress's intent to prevent domestic violence from escalating to murder. As Justice Alito has commented, this is not "what Congress had in mind when it added this category in 1996 to combat domestic violence[.]" Rehaif, 139 S. Ct. at 2208 (Alito, J., dissenting).

The "practical considerations" discussed in Hayes also undercut the majority's reasoning.[18] As the Court acknowledged,

---

failed to explain how a criminal defendant is expected to understand that complexity. The court also failed to discuss the controlling Supreme Court precedents described above, i.e., Hayes or Voisine, which help clarify the definition.

[17] The majority's rule will result in a loss of the protections found in section 922(g)(9) in situations where state prosecutors, in order to secure convictions, accept plea bargains of "assaults" in cases of domestic violence.

[18] The district court also did not abuse its discretion in excluding Minor's self-serving testimony that he did not know he

Congress extended the federal firearm prohibition to domestic violence misdemeanants to "keep[] firearms out of the hands of domestic abusers" because "[f]irearms and domestic strife are a potentially deadly combination nationwide." 555 U.S. at 426-27; see also Voisine, 136 S. Ct. at 2281 ("Congress passed [section] 922(g)(9) to take guns out of the hands of abusers convicted under the misdemeanor assault laws then in general use in the States."); Kanter v. Barr, 919 F.3d 437, 466 (7th Cir. 2020) (Barrett, J., dissenting) ("'[N]o one doubts that the goal of [section] 922(g)(9), preventing armed mayhem, is an important governmental objective' and '[b]oth logic and data establish a substantial relation between [section] 922(g)(9) and this objective.'" (quoting United States v. Skoien, 614 F.3d 638, 642 (7th Cir. 2010) (en banc) and citing id. at 644 ("[N]o matter how you slice these numbers, people convicted of domestic violence remain dangerous to their spouses and partners."))). This purpose and the provision's protection against further violence towards domestic violence victims are frustrated by the majority's newfound rule.

II.

I dissent.

---

was prohibited from possessing a gun, as ignorance of the law is no excuse.